UNITED STATES of America, Plaintiff,

v.

Carl CROZZOLI, Frank Sharp, John Mastrangelo, Kim Okerwall and Andrea Baxter, Defendants.

No. CR–88–0042.

United States District Court,
E.D. New York.

Nov. 2, 1988.

Patricia A. Pileggi, U.S. Asst. Atty., for the U.S.

Paul D. Lazarus, Miami, Fla., for Carl Crozzoli.

Fred Haddad, Ft. Lauderdale, Fla., for John Mastrangelo.

Robert Blossner, New York City, for Kim Okerwall.

GLASSER, District Judge:

A variety of motions have been made on behalf of the defendants Crozzoli, Mastrangelo and Okerwall who have been charged with conspiring to violate the narcotics laws. Crozzoli has also been charged with violating 21 U.S.C. § 848 (continuing criminal enterprise). Those motions seek the suppression of evidence obtained by the interception of telephone conversations and the execution of search warrants for the reason that the affidavits in support of the wiretap order and search warrants were legally insufficient; a bill of particulars; additional discovery and severance.

Agents of the United States Customs Service and Drug Enforcement Administration learned from a confidential source that he had been recruited to assist the defendant Crozzoli in importing 1,000 pounds of cocaine into the United States from Columbia. Authorization to intercept conversations on the telephones of Crozzoli and Sharp were sought after a period of time during which pen registers had been in place, the defendants were surveilled and conversations between Crozzoli and the confidential source were recorded. Judge Korman of this court, authorized interceptions of telephone conversations as follows: On September 16, 1987—Carl Crozzoli's business and residence phones; on September 28, 1987—Frank Sharp's residence phone; on October 27, 1987—Frank Sharp's residence phone.

On September 30, 1987, Crozzoli was arrested after selling seven kilograms of cocaine to an undercover detective. Crozzoli continued to negotiate with his co-conspirators to import the 1,000 pounds of cocaine while incarcerated in the Nassau County jail following his arrest. The other defendants were arrested in January 1988. The execution of a search warrant at Sharp's residence resulted in the seizure of more than $80,000 in cash from a safe deposit box.

The motion to suppress the evidence resulting from the intercepted telephone conversations is predicated upon the assertions that normal investigative techniques were not exhausted prior to seeking the wiretap authorizations, that the affidavits in support of the wiretap application contained information that was materially false, and that probable cause to issue the order was absent. The merits of each of those assertions will be considered in turn.

I.

*Exhaustion of Normal Investigative Techniques*

Each application for an order authorizing the interception of telephone communications must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The defendants contend that the applications submitted here represent little more than a ritualistic recitation of the statutory mandate and that the applicants already had or could otherwise have obtained the information they professed was obtainable only by electronic eavesdropping.

In their affidavit of September 16, 1987, Special Agent John Johnson of the United States Customs Service and Special Agent Tina Randall of the Drug Enforcement Administration state that a confidential informant (CS–1) has provided as much information as he/she possessed about the defendants' activities. That informant indicated that if granted immunity and if placed in the witness protection program, he/she would testify. CS–1 believes too, that were he/she to testify, his/her life and the life of his/her family would be endangered. The affiants stated that Crozzoli and Mastrangelo provided less than detailed information regarding other participants and their roles in the planned importation of the cocaine. They state that the investigative value of physical surveillance is limited for reasons which are provided (par. 97) as is the investigative value of telephone toll records and pen registers (par. 98). The agents explain the undesirability of resorting to search warrants, investigative grand

juries and interviews (pars. 99–100) and explain the limited utility of undercover agents (pars. 101–102).

In their affidavit of September 28, 1987, the agents, in paragraphs 42–52 provide essentially the same reasons for asserting that other investigative techniques have been tried and failed or appear unlikely to succeed if tried.

The affidavit of Agents Johnson and Randall of October 27, 1987, in paragraphs 32–42 essentially repeat their prior explanations for believing that other investigative procedures were unsuccessful or appear unlikely to succeed if tried.

In addition to attacking the affidavits as pious cant, the defendants assert that the wiretap was superfluous because the government had more than enough evidence to obtain an indictment and speculate as to what the government might have obtained had undercover agents been introduced to Crozzoli and Mastrangelo and had the government used traptraces.

In the light of the judicial elaboration upon § 2518(1)(c), the asserted failure to comply with that statute is both unpersuasive and without merit. The purpose of § 2518(1)(c)

> "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." ... Moreover the required showing is to "be tested in a practical and commonsense fashion." ... In short, the requirement is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigation techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 982, 39 L.Ed.2d 225 (1974).

*United States v. Martino,* 664 F.2d 860, 868 (2d Cir.1981) (quoting *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.) (footnote omitted), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977)), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982).

■ The issuing judge was adequately informed of the difficulties involved in the use of conventional techniques which, when tested in a practical and commonsense way gave adequate assurance that the electronic eavesdropping was being properly resorted to. The defendants'

> Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive.

*United States v. Shipp,* 578 F.Supp. 980, 989 (S.D.N.Y.1984). "An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to suppress an eavesdropping order even if every other possible means of investigation has not been exhausted." *United States v. Terry,* 702 F.2d 299, 310 (2d Cir.), *cert. denied sub nom, Williams v. United States,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). A careful reading of the affidavit of Agents Johnson and Randall fails to support the defendants' claim that they falsely swore that the investigation went as far as it could and that the government had insufficient evidence for an indictment. The sufficiency or insufficiency of enough evidence to obtain an indictment is, in any event, irrelevant.

> Even though officers may have garnered sufficient information without the use of wiretaps to support an indictment against Matthews and possibly against a few others, there was every reason to believe that additional coconspirators were involved who could not be successfully investigated without wiretapping.

*United States v. Hinton,* 543 F.2d 1002, 1011 (2d Cir.1976), *cert. denied sub nom, Darby v. United States,* 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977).

The defendants' assertion that the wiretap was improperly authorized because of the willingness of the confidential source to testify is a selective interpretation of the affidavit. The willingness of the confidential source to testify was conditioned upon a grant of immunity and his/her acceptance by the witness protection program.

The confidential source's fear for his/her safety and for the safety of his/her family is explicitly stated to be based upon his/her knowledge of the defendants.

In fn. 5 on page 12 of the defendant Crozzoli's memorandum in support of his motion, he states:

It would not seem too cynical to propound the theory that, where there is a CS–1, and a CS–3, as reflected in the Affidavit, there is probably an additional confidential source called "CS–2" who also was furnishing information to the government regarding the organization.

That there was indeed a CS–2 is plainly reflected in paragraph 33 of the September 16 affidavit of Johnson and Randall.

■ The defendants assertion that the government could have realized the objectives of the investigation by introducing an undercover agent to Crozzoli and Mastrangelo is, at best, purely speculative (Mem. p. 13). The simple response, in any event, as has already been indicated, is that there is no requirement that every alternative investigative technique be exhausted as a condition precedent to an eavesdropping order. There is also no requirement that the government must justify a failure to plant a spy in the midst of the defendants' enterprise. *United States v. Vento*, 533 F.2d 838, 850 (3d Cir.1976).

*United States v. Lilla*, 699 F.2d 99 (2d Cir.1983) upon which the defendants place such heavy reliance and would have the court equate with this case is clearly distinguishable. There, a state trooper purchased a pound of marijuana from the defendant. When the trooper indicated an interest in purchasing cocaine, the defendant said that his brother was making arrangements to bring some from Florida and that cocaine would be available in a week or two. The defendant then gave the trooper his home and work telephone numbers. In a subsequent application for a wiretap, the trooper's affidavit did not reveal what, if any, investigative techniques were attempted prior to the wiretap request. Instead, the affidavit simply stated that "no other investigative method exists to determine the identity" of individuals who might have been involved with the defendant. In concluding that the affidavit was deficient, the court said:

The affidavit fails to specify the facts upon which [the trooper] based this conclusion; there is no indication why simple surveillance of Lilla's place of work or his home would not have been useful. The affidavit does not enlighten us as to why this narcotics case presented problems different from any other small-time narcotics case; if anything, Lilla operated more openly than most and with less care in terms of evading detection. In short, we agree with counsel at argument who stated that the only useful purpose that might be served by the trooper's affidavit in this case is as an exhibit at a police training academy of how *not* to conform to the federal and state statutory requirements.

*Lilla*, 699 F.2d at 104–05. The vast distinction between the affidavit in *Lilla* and the affidavits here are thus plainly apparent. The other asserted bases for claiming noncompliance with the statutory requirement have been considered and deemed to be without merit.

## II.

### *The Alleged Falsity of The Affidavits*

The defendants assert that the applications for an electronic eavesdropping order submitted to Judge Korman were deliberately deceptive. For example, deliberate deception is said to be apparent from the similarity of some language in the wiretap applications and the application for a warrant to search the home of the defendant Sharp. The court can discern nothing either in the sequence of the applications or their content which can be characterized as false or misleading. The defendants also claim that Judge Korman was not fully advised of applications made prior to the ones presented to him; that Judge Korman was not advised of prior recorded conversations between the confidential source, Crozzoli, and Sharp, and that Judge Korman was not properly advised that Crozzoli had been arrested. A review of the affidavit of Johnson and Randall readily establish that

those assertions are baseless. Equally without merit are the speculations that the district court failed to carefully scrutinize the applications. The court has considered the other assertions of deliberate deception with which the government is charged and find each of those assertions to rest upon foundations of sand.

■ The defendants' reliance upon *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) for the assertion of a right to a hearing is misplaced. The defendants acquire no right to an evidentiary hearing by the fragile charge that the government has intentionally falsified its application for a wiretap order and that the agents' affidavit in support of that application is a tissue of lies. *Franks* teaches that the defendant must make a substantial preliminary showing that a false statement was knowingly and intentionally or with a reckless disregard for the truth made in the affidavit and that the statement was necessary to a finding of probable cause before a hearing would be required. Such a hearing is not required merely because the defendants disagree with the government's assessment of the need for a wiretap and with the judge's determination that an order is appropriate. Conclusory allegations are not the equivalent of an offer of proof or of a substantial preliminary showing.

### III.

### Probable Cause

The defendants also claim that the affidavit of September 28, 1987 in support of the application for an order authorizing the interception of communications over the telephone of Frank Sharp does not establish probable cause to believe that his telephone was used to discuss drug transactions with persons other than Crozzoli. A reading of the affidavit readily leads to the conclusion that the facts made known to the issuing magistrate were sufficient to warrant a prudent person to believe that evidence of a crime will be obtained through the use of electronic surveillance. The affidavit submitted to the magistrate is to be tested in a practical, common-sense

fashion. This court must give substantial deference to Judge Korman's determination that probable cause existed and should resolve any doubts as to the existence of probable cause in favor of sustaining the authorization. I should add that I have no doubt as to the existence of probable cause and would have confidently issued the order of authorization. *See United States v. Fury*, 554 F.2d 522 (2d Cir.1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed. 2d 776 (1978); *United States v. Londono*, 553 F.2d 805 (2d Cir.1977).

Based upon the foregoing the motions to suppress the evidence obtained from the wiretaps are denied.

### IV.

### Bill of Particulars

The defendants have moved for a bill of particulars which would recite the acts committed by each defendant; the conspiratorial acts committed by each after the arrest of Crozzoli, and the identities of the co-conspirators.

■ Rule 7(f) of the Fed.R.Cr.P. permits a defendant to seek a bill of particulars to identify with specificity the nature of the charge pending against him so that he may prepare for trial, avoid surprise and to be able to claim double jeopardy should he be prosecuted again for the same offense. *See Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927); *United States v. Glaze*, 313 F.2d 757, 779 (2d Cir.1963) (quoting *United States v. Murray*, 297 F.2d 812, 819 (2d Cir.), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962)). The decision to grant or deny a request for a bill of particulars rests within the sound discretion of the court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984). As a general rule if the information the defendant seeks is to be found in the indictment or in some acceptable alternative form, no bill of particulars is required. *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir.1982); *United States v. Society of Independent Gasoline Marketers*, 624 F.2d 461, 466 (4th

Cir.1979), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981).

■ The indictment, coupled with the discovery already provided the defendants, more than adequately notify them with sufficient particularity of the pending charges enabling them to prepare for trial without surprise and to utilize a plea of double jeopardy should that become necessary. The motion for a bill of particulars is, therefore, denied.

## V.

*Witness List and Prior Criminal Acts*

The defendant Mastrangelo has moved for an order compelling the government to disclose prior criminal acts which it intends to elicit and the names and addresses of the witnesses who will testify to them.

■ The government has agreed to reveal to Mastrangelo, prior to trial, similar act evidence which it believes will be admissible pursuant to Rule 404(b), Fed.R.Evid. The government opposes the motion as regards the witness list. The government is not obligated to furnish such a list absent a particularized showing of need. *United States v. Cannone,* 528 F.2d 296, 301–02 (2d Cir.1975). Vague assertions that the disclosure of witnesses will assist in preparation for trial is not a particularized showing of need. *See United States v. Wilson,* 565 F.Supp. 1416 (S.D.N.Y.1983). The motion in this respect is, therefore, denied.

## VI.

*Request for Brady Material*

■ The defendant Mastrangelo has moved for disclosure of all agreements between the government and civilian witnesses. The government's response is that the material will be provided prior to trial pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and should not be disclosed prior to trial. The defendant's request for impeachable convictions and other exculpatory information has elicited a similar response. The timing of the

disclosure of *Brady* material has not been the subject of extensive discussion. One commentator states that "lower courts agree that neither *Brady* nor *Agurs* imposes a general requirement of pretrial disclosure of exculpatory material. As one court has noted: '*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation' ... For most exculpatory evidence, the prosecutor should be able to satisfy his constitutional obligation by disclosure at trial." 2 La Fave and Israel, *Criminal Procedure* 545 (1984) (footnotes omitted). The commentators' correctly state the holdings of most lower courts in this regard. The justification for those holdings is elusive. Surely, such a dilution of *Brady* is not warranted by a literal reading of that decision, viz:

> We now hold that the suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. at 87, 83 S.Ct. at 1196 (emphasis added). To permit the prosecution to withhold exculpatory evidence despite a request until such time as the prosecutor chooses to disclose it, is to permit the prosecutor to control, to some extent, the preparation of a defense. A view believed to be faithful to the teaching of *Brady* was expressed in *United States v. Mitchell,* 372 F.Supp. 1239, 1257 (S.D.N.Y.1973) as follows:

> ... we reject the blanket assertion that *Brady* imposes no pretrial obligation on ... the Government.... We perceive the due process implications of *Brady* as obligating the Government to disclose exculpatory information *as soon as the character of such information is recognized.*

In *United States v. Goldman,* 439 F.Supp. 337 (S.D.N.Y.1977) the court observed that "if exculpatory evidence is produced for the first time at trial, the defendant may not have an adequate opportunity to effectively utilize the material, particularly if it points to the existence of other evidence helpful to the defendant." 439 F.Supp. at

349. The government is directed to disclose to the defendants such evidence as it is obligated to disclose by *Brady.*

## VII.

### Periodic Reports

The defendants request that periodic reports required by Judge Korman and evidence of sealing be provided to them or submitted to this court for examination *in camera.* The basis of this request is "to determine whether the government complied with the orders of the Court regarding periodic reports and sealing, and in light of past failures of the government to be totally candid and forthcoming with the Court." (Motion of Crozzoli and Mastrangelo, p. 39). It has been previously indicated that after a careful evaluation of the affidavits in support of the wiretap orders and the defendants' critique of them, the court does not share the view of the defendants that the government misled or withheld significant information from the court.

■ Progress reports concerning a wiretap are not mandatory. 18 U.S.C. § 2518(6) provides:

Whenever an order authorizing interception is entered pursuant to this chapter, the order *may* require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge *may* require. (emphasis added)

The requirement that progress reports be filed at all is discretionary with the judge issuing the wiretap order. If such an order had been issued and disobeyed, sanctions are also discretionary with the judge. *United States v. Scafidi,* 564 F.2d 633, 641–2 (2d Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 400 (1978). The defendants do not contend that progress reports were not filed, or were not filed within the time required, or that Judge Korman abused his discretion in any way in this regard. The defendants also do not furnish any authority to support this purely gratuitous request which is hereby denied.

## VIII.

### Severance

The defendants Mastrangelo and Okerwall each move for a severance pursuant to Rules 8 and 14 of the Fed.R.Cr.P. Rule 14 provides that a court may grant a severance of defendants if it appears that a defendant is prejudiced by joinder, or provide whatever other relief justice requires. It lies within the discretion of the court to grant relief from a joinder of defendants which is alleged to be prejudicial and the defendant bears the "heavy" burden of demonstrating that he is substantially prejudiced by joinder and is or will be denied a fair trial. *United States v. Losada,* 674 F.2d 167, 171 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982).

■ The essential basis for the motion to sever is that the evidence against the co-defendants is grossly disproportionate to the evidence against them and that the evidence against the co-defendants may in some respects, be unrelated and inadmissible against them. These reasons for seeking a severance are advanced almost routinely, it seems, in multi-defendant cases and are almost invariably rejected. "It is almost inevitable that in an unlawful scheme or conspiracy involving several defendants some will be shown to have been more culpable than others.... But a defendant is not entitled to a severance simply because certain evidence may be admissible only against others." *United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984). Nor is a defendant entitled to a severance because of a belief that he may have a better chance of acquittal at a separate trial. *United States v. Borelli,* 435 F.2d 500 (2d Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). If, in fact, it should develop that evidence admissible against one defendant is not admissible against another, appropriate limiting instructions will protect against prejudicial spillover, if any. Juries must be

deemed capable and determined to follow the instructions of the court. *United States v. Kaplan,* 510 F.2d 606, 611 (2d Cir.1974). For the foregoing reasons, the severance motions are denied.

## IX.

### *Rule 8(b) Joinder*

 The defendant Okerwall contends that he was improperly joined with his co-defendants in that the conspiracy with which he is charged in Count I of the indictment has an insufficient nexus with Counts 2 through 4 in that he, Okerwall, "had no interest in or interdependence with the others as to their alleged conduct charged in Counts 2 through 4." The government's response to that assertion is that this defendant and the counts are properly joined because Counts One, Three and Four are violations which occurred in furtherance of the Continuing Criminal Enterprise with which co-defendant Crozzoli is charged with operating in Count Two. Count Three charges Crozzoli and Sharp and others with conspiracy to distribute and possess with intent to distribute cocaine. Count Four charges Crozzoli, Baxter and others with the same offense. Count One charges all the defendants with that offense.

Rule 8(b) of the Fed.R.Cr.P. provides in relevant part:

Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

As the words of Rule 8(b) plainly indicate, multiple defendants may be charged with and tried for multiple offenses only if the charged acts are part of a "series of acts or transactions constituting ... offenses." Count 2 explicitly charges Crozzoli with engaging in a continuing criminal enterprise in that he committed violations of the narcotics laws "including the viola-tions set forth in Counts One and Three through Twenty–Two of this indictment, which violations were part of a continuing series of violations" Crozzoli committed with at least five other persons. The conspiracy offense with which Okerwall is charged in Count One is thus explicitly charged as part of the series of acts or transactions with which Crozzoli is charged in Count Two, as are all the offenses with which the defendants are charged in the other counts of this indictment. "Participation in a series of transactions does not require participation in each transaction." *United States v. Teitler,* 802 F.2d 606, 615 (2d Cir.1986). The "series of transactions" which justify joinder may be conspiracies as well as substantive offenses. The conspiracies to distribute and to possess with intent to distribute cocaine charged in Counts 1, 3 and 4 were part of the series of transactions engaged in by Crozzoli with his co-defendants in conducting his continuing criminal enterprise and were properly joined in this indictment.

## X.

### *Multiple Conspiracies*

 The defendant Okerwall also contends that the evidence at trial will establish multiple conspiracies and not *the* conspiracy with which he is charged in Count 1. Whether the proof in a case establishes a single or multiple conspiracies is an issue of fact to be resolved by a properly instructed jury. *United States v. McGrath,* 613 F.2d 361, 367 (2d Cir.1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed. 2d 827 (1980). Accordingly, this contention of the defendant Okerwall is without merit.

## XI.

### *Venue*

 The defendant Okerwall also moves to dismiss Count One charging a conspiracy "within the Eastern District of New York and elsewhere" on the ground that venue is misplaced. The cases and commentators agree, by and large, that whether venue has been properly proved is

a question of fact for the jury. Wright, Federal Practice and Procedure: Criminal 2d § 307; *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980). But see, Korman, Commentary: Criminal Venue, 43 Brooklyn Law Review 1197 (1977). The crime of conspiracy may be prosecuted in any district in which the conspiracy was formed or in which there was an act in furtherance of the conspiracy. *Word v. United States*, 589 F.Supp. 806, 807 (S.D. N.Y.1984). See also, *United States v. Reed*, 773 F.2d 477 (2d Cir.1985), where the court observed, at pages 480–81:

> We believe it clear that fairness to defendants cannot be the sole grounds for determining venue because the most convenient venue for them may often have little, if any, connection with the crimes charged. For example, all appear to agree that the place where the acts constituting the crime occurred is a proper venue. It is hardly uncommon, however, for a defendant to have only limited contact with that place. A foreign courier attempting to import illegal drugs through Kennedy Airport will not find the Eastern District of New York particularly convenient *nor would a co-conspirator in Miami who never set foot in New York.* (emphasis added).

This motion addressed to venue is denied at this time, with leave to renew it at the end of the government's case.

SO ORDERED.