UNITED STATES of America

v.

Glen RICHARDS, Defendant.

United States of America

v.

Robert Tarantola, Defendant.

Nos. 96CR675, 96CR676.

United States District Court,
E.D. New York.

April 20, 2000.

Loretta E. Lynch (Elizabeth A. Lesser and Jonathan S. Sack, of counsel), Brooklyn, NY, for U.S.

Donna R. Newman, New York City, for defendant Glen Richards.

Joel Winograd, New York City, for defendant Robert Tarantola.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendants Glen Richards and Robert Tarantola are charged in separate indictments with conspiracy to distribute and possess marijuana and cocaine and related offenses. The government moves pursuant to Federal Rule of Criminal Procedure 13 to consolidate the two cases and try Richards and Tarantola together. Both defendants oppose the motion. Tarantola has also filed various pretrial motions, in which Richards joins.

### I

Richards was charged in a three-count indictment returned in February of 1996 and unsealed on July 24, 1996. *United States v. Glen Richards*, No. 96 CR 675. Count One charges Richards with conspiring with others to distribute and possess with intent to distribute marijuana and cocaine between January 1992 and March 1993. Count Two charges him with attempt to distribute cocaine between November 18, 1992 and November 24, 1992. Count Three charges him with use of a telephone on February 1, 1993 to facilitate the distribution of marijuana.

Tarantola's indictment, which was returned and unsealed on the same dates as that of Richards, charges him in Count One with conspiracy to distribute and possess with intent to distribute marijuana and cocaine between December 1990 and March 1993, and in Count Two with distribution and possession with intent to distribute marijuana between January 1992 and April 1992. *United States v. Robert Tarantola*, No. 96 CR 676,

### II

#### A

The government moves under Rule 13 to consolidate the trials of Richards and Tarantola, saying that it anticipates proving at trial that Richards and Tarantola were involved in different "spokes" of the same "wheel" conspiracy—a drug-trafficking scheme primarily based in Texas.

Dozens of other alleged members of this conspiracy were indicted in 1993. Several of them pleaded guilty and several others were found guilty in two separate trials before this Court. *See United States v. Davila Moreno, et al.*, 93 CR 156; *United States v. Sanchez and Miller*, 93 CR 156.

The charges against Richards stem from three alleged sets of transactions involving the Texas-based conspiracy. The first was a series of marijuana shipments to and from Knoxville, Tennessee from October to December, 1992. Richards, who was based in Knoxville, allegedly received at least one shipment from Texas and delivered another, through a courier, to Chicago. The same courier then drove to the New York to receive drug proceeds from Tarantola. Second, Richards allegedly attempted to deliver cocaine to other members of the Texas-based conspiracy in the New York area in November 1992. Third, Richards allegedly attempted in "early 1993" to pick up drug proceeds in New York from other members of the conspiracy.

The charges against Tarantola derive from two sets of alleged transactions in-

volving the Texas-based conspiracy: a shipment of 1,000 pounds of marijuana from Texas to Brooklyn on January 10, 1991; and a series of marijuana shipments from Texas to New York between approximately January and April 1992. Tarantola allegedly conspired with members of the Texas organization with respect to the receipt of those shipments and the delivery of the resulting drug proceeds.

The government says its proof of these allegations against the two defendants "will come, almost entirely, from the same" evidence. For example, the government expects to call four cooperating witnesses who worked for the Texas-based organization and others, and who allegedly delivered drugs and picked up drug proceeds from both Richards and Tarantola. They also expect to offer recorded conversations between two New York-based members of the Texas organization to establish the participation of both defendants in the alleged deliveries of drugs and drug proceeds. The government says it will offer other evidence against both defendants, including address books and the testimony of Federal Bureau of Investigations agents investigating the broader conspiracy.

Defendants oppose a joint trial on two grounds: first, that the two cases are insufficiently related to permit joinder; and second, that joinder will result in a "prejudicial spillover" from one case to the other, depriving each defendant of a fair trial.

## B

Rule 13 of the Federal Rules of Criminal Procedure states:

> The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information.

Fed.R.Crim.Pro. 13.

Rule 8(b)of the Federal Rules of Criminal Procedure governs the question whether the defendants "could have been joined in a single indictment." *See United States v. Halper*, 590 F.2d 422, 428 (2d Cir.1978). That rule states:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.Pro. 8(b).

■ Defendants argue that the propriety of joinder under Rule 13 must be judged solely on the basis of the indictments, without reference to evidentiary proffers or other pre-trial representations made by the government. According to defendants, Rule 8(b)—and by extension, Rule 13—is a "rule of pleading." They argue that the indictments against Richards and Tarantola allege no facts that would tie one defendant to the other, even indirectly.

For this argument, defendants rely exclusively on decisions interpreting joinder of defendants under a single indictment pursuant to Rule 8(b). In particular, they cite two decisions from the Eastern District of New York. *United States v. Rucker*, 32 F.Supp.2d 545, 548 (E.D.N.Y.1999) ("Proper joinder is determined from the face of the indictment"); *United States v. Ashley*, 905 F.Supp. 1146, 1164 (E.D.N.Y. 1995) ("Rule 8(b) is a pleading requirement" under which "the propriety of joinder is to be determined solely by examining the allegations in the Indictment.").

But these statements do not represent the settled law in the Second Circuit. *Compare United States v. Friedman*, 854 F.2d 535, 561 (2d Cir.1988) ("In evaluating the defendants' claims of misjoinder under Rule 8(b) ... our task is limited simply to determining whether the indictment properly alleged their participation in a RICO conspiracy."), *with Pacelli v. United States*, 588 F.2d 360, 367 n. 20 (2d Cir. 1978) ("necessary linkage" between cocon-

spirators, while possibly absent from the face of the indictment, could be "established by the evidence presented at trial").

Other circuits are split on the question. *See United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C.Cir.2000) (court may look beyond indictment to pretrial evidence and representations by government); *United States v. McGill*, 964 F.2d 222, 240–41 (3d Cir.1992) (same); *United States v. Talavera*, 668 F.2d 625, 629 (1st Cir.1982) (same); *but see United States v. Marzano*, 160 F.3d 399, 401 (7th Cir.1998) (basis for Rule 8(b) joinder must appear in indictment); *United States v. Wadena*, 152 F.3d 831, (8th Cir.1998) (same); *United States v. LaSpesa*, 956 F.2d 1027, 1032 (11th Cir. 1992) (same).

Unlike the decisions cited by defendants, this case is not one in which defendants were indicted together pursuant to Rule 8(b), but concerns a post-indictment motion for joinder under Rule 13.

Rule 13 is quite clearly not merely a "rule of pleading." Its purpose is to allow joinder after the original indictments. It would make little sense to exclude from consideration under Rule 13 any factual developments, refinements in the government's evidence, or aspects of judicial economy that have become apparent after the grand jury found the initial indictments. In fact, such developments, in most cases, will prompt a Rule 13 motion for joinder.

That is not to say that the substantive standard for joinder is any more lax under Rule 13 than under Rule 8. *See* Fed. R.Crim.Pro. 13 (joinder allowed only where offenses and the defendants "could have been joined in a single indictment"). Indeed, courts must exercise particular care in a Rule 13 case to avoid jury confusion or unfair prejudice to defendants. *See Halper*, 590 F.2d at 428. But even if Rule 8(b) were to be given the narrow reading urged by defendants—a reading not expressly endorsed by the Second Circuit—the timing and procedural posture of a Rule 13 motion necessarily broadens the scope of the factors bearing on the propriety of joinder.

▌ The Second Circuit has recognized the different concerns raised by Rule 8(b) and Rule 13: the former posits a question of law reviewed *de novo* at the appellate level, while the latter is reviewed only for abuse of discretion. *See United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir.1988). Thus, "the decision to order two indictments tried together is one to be made in the district court's discretion." *United States v. Halper*, 590 F.2d 422, 428 (2d Cir.1978).

In applying Rule 13, courts in this circuit have looked beyond the face of the indictment to determine whether joinder is proper. *See Halper*, 590 F.2d at 429 (Rule 13 joinder of offenses held improper in part on basis of representations at pretrial hearings and proof at trial); *United States v. Perez*, 574 F.Supp. 1429, 1438 (E.D.N.Y.1983) (granting Rule 13 motion in part because "the evidence to be introduced at trial will likely be the same for each" defendant); *United States v. Gordon*, 493 F.Supp. 814, 821–22 (N.D.N.Y. 1980) (ordering joinder of two indictments in part on basis of supporting affidavits), *aff'd* 655 F.2d 478, 485 (2d Cir.1981); *United States v. Persico*, 621 F.Supp. 842, 855 (S.D.N.Y.1985) (denying joinder where bill of particulars showed no relation between offenses in two indictments); *cf. United States v. De Yian*, No. 94 cr 719, 1995 WL 368445 at *10 (S.D.N.Y.1995) (Rule 13 "appears to support the position that the basis for [Rule 8(b)] joinder may come from outside the indictment").

In short, in determining whether to allow separately indicted defendants to be tried together pursuant to Rule 13, the Court may look beyond the face of the indictment to the government's representations of its anticipated proof.

### C

As noted, the substantive standard set forth in Rule 8(b) applies to joinder under

Rule 13. *Halper*, 590 F.2d at 428. Thus, joinder is proper only where the defendants "are alleged to have participated in the same act or transactions or in the same series of acts or transactions constituting an offense or offenses," Fed.R.Crim. Pro. 8(b).

▮ This standard is met where the acts charged are "unified by some substantial identity of facts or participants, or arise out of a common scheme or plan." *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir.1989) (citations and internal quotations omitted). "Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.'" *Turoff*, 853 F.2d at 1042. But joinder is appropriate where a "reasonable person would easily recognize the common factual elements." *Id.* at 1044.

▮ In deciding whether separately indicted defendants may be tried together, the court looks to "the implicit, and often conflicting policies of Rule 13[:] the promotion of the economical and efficient administration of criminal justice by the avoidance of needless multiple trials and the protection of criminal defendants from the unfair prejudice that may be caused by the joining of indictments." *Halper*, 590 F.2d at 428.

▮ The balance clearly weighs in favor of joinder here. Richards and Tarantola are each charged with taking part in the same conspiracy to distribute cocaine and marijuana from Texas to various locations, including Knoxville and New York City. Defendants also interacted with some of the same drug and money couriers, three of whom may be key witnesses at a joint trial. Thus, the illegal acts allegedly committed by Tarantola and Richards share a "substantial identity of facts or participants" and "arise out of a common scheme or plan." *Attanasio*, 870 F.2d at 814.

Richards argues that the conspiracy charged is not a true "wheel" conspiracy because there is no outer "rim" linking the various "spokes" emanating from the Texas "hub." He says the Brooklyn operation

in which Tarantola allegedly was involved was strictly a local retail business, while the Knoxville "spoke" in which Richards allegedly was engaged was a wholesale network "alleged to cover numerous cities in several states, including Brooklyn."

This argument points up the strength the government's position. That the defendants allegedly occupied different tiers within a narcotics distribution scheme underscores the reach of the conspiracy and illustrates the links between these defendants. *Cf. United States v. Teitler*, 802 F.2d 606, 615 (2d Cir.1986) ("participation in a series of transactions does not require participation in each transaction").

▮ Similarly, "[a] single conspiracy may encompass members who neither know one another's identities, nor specifically know of one another's involvement." *United States v. Sureff*, 15 F.3d 225, 230 (2d Cir.1994) (citations omitted). In a narcotics distribution case, defendants

> may be held to have agreed in a single conspiracy if each knew or had reason to know that other retailers were involved in a broad project for the importation, distribution, and retail sale of narcotics and had reason to believe that their own benefits derived from the operation were probably dependent upon the success of the entire venture.

*United States v. Barnes*, 604 F.2d 121, 155 (2d Cir.1979). In any event, the existence of a single or multiple independent conspiracies "is a question of fact for a properly instructed jury." *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir.1980).

▮ Considerations of efficiency and judicial economy weigh heavily in favor of joinder. As noted, much of the case against Richards and Tarantola will consist of describing the Texas-based conspiracy and defendants' roles in it, and much of the evidence will come from the same sources. Where the offenses to be joined are alleged to be "acts or transactions constituting parts of a part of a common scheme or plan," the government "should

not be put to the task of proving essentially the same set of facts more than once." *Halper*, 590 F.2d at 430.

Defendants also urge that the government's decision to indict Richards and Tarantola separately, but on the same day and under consecutive docket numbers, indicates that "the government at that time concluded that the cases required separate indictments."

Rule 13 expressly envisions joinder of defendants who were initially indicted separately. The fact that there were two indictments thus cannot be material to the propriety of joinder, regardless of when those indictments were returned.

In addition, Tarantola was still a fugitive at the time the indictments were unsealed, and remained so until July of 1999. A joint indictment would have made little sense under such circumstances: had Tarantola remained at large, the government would now be moving for severance rather than joinder.

### D

The court must, of course, consider whether joinder of these cases will severely prejudice defendants at trial.

■ Defendants who would otherwise properly be tried together should be given separate trials if they show "a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993); *see also United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir.1996).

■ Both Richards and Tarantola argue that the introduction of evidence pertinent only to the other defendant will leave the jury so confused as to be unable to make an "individualized determination" of guilt or innocence. They cite *United States v. Cambindo Valencia*, 609 F.2d 603, 629 (2d Cir.1979), in which the Second Circuit reversed several convictions on the ground that "there was simply too much

other evidence offered of entirely separate actions and unconnected defendants, fanning the flames of prejudicial spillover."

The danger of "prejudicial spillover" in this case is minimal at worst. There are only two defendants and a total of five counts. *Cf. Cambindo Valencia*, 609 F.2d 603 (risk of jury confusion too high in trial of ten defendants, eleven counts, and multiple conspiracies). The defendants were allegedly involved in the same conspiracy, albeit in different "spokes." To explain that conspiracy and defendants' roles in it, the government's case will require the introduction of a large amount of evidence that would be admissible at both of two separate trials if the Court were to deny joinder. Plainly defendants will not be improperly prejudiced from such evidence by being tried together.

To be sure, there will be evidence pertinent only to Richards or Tarantola individually. But there is no indication that any such evidence is so inflammatory that its mere introduction against one defendant would deprive the other defendant of a specific trial right or prejudice the jury against him. Moreover, the jury is hardly likely to be unable to sort out which portions of the trial record are relevant to which defendant. As defendants note, the spokes of the conspiracy in which Richards and Tarantola were involved are quite distinct. The jury should have little difficulty keeping them straight in their minds.

Any residual risk of confusion can be minimized through proper jury instructions. *See United States v. Locascio*, 6 F.3d 924, 947 (2d Cir.1993); *United States v. Hammad*, 678 F.Supp. 397, 402 (E.D.N.Y.1987). Defendants argue that "limiting instructions are an illusory remedy" and are "totally ineffective in eliminating or even reducing the [prejudicial] effects of joinder." The Court does not share this skepticism, at least in this case.

Richards also contends that he will be prejudiced by the "disparity in the evidence" as between him and Tarantola, that is, there will be more evidence against

Tarantola, and the weight of evidence will influence the jury's beliefs as to Richards' role.

The factual basis for this argument is unclear. At this stage it appears that the government will offer at least as much if not more evidence against Richards. In any event, the Second Circuit has rejected similar arguments even where the disparity is far more marked than it can be in this case. *See Locascio,* 6 F.3d at 947 ("joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible").

▮▮▮ Finally, defendants argue that joinder will result in prejudice because their defenses will be mutually antagonistic. For example, they say that at least one witness appears to have identified Richards but not Tarantola, and that Tarantola might seek to bolster this witness's credibility while Richards would hope to undermine it.

▮▮▮▮ "Mutually antagonistic" defenses are those that conflict so irreconcilably that acceptance of one defendant's defense will lead the jury to convict the other. *See United States v. Salameh,* 152 F.3d 88, 116 (2d Cir.1998) (citations omitted). "A simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier,* 689 F.2d 21, 27–28 (2d Cir.1982). "Mutually antagonistic defenses are not prejudicial *per se.*" *Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). A separate trial is warranted only if joinder would compromise a specific trial right of one of the defendants or preclude the jury from making a reliable judgment. *See id.* 506 U.S. at 539, 113 S.Ct. at 938.

Defendants have done no more than speculate that there may be "some antagonism" between their cross-examination and summations as to one witness. *Cf. Carpentier,* 689 F.2d at 27–28. They have identified no irreconcilable difference between their core defense theories or any inconsistencies that would influence the jury to convict one defendant but not the other.

### III

▮▮▮ Defendants move to dismiss the charges against them pursuant to Federal Rule of Criminal Procedure 48(b) because of the delay in filing the indictments. That rule allows a court to dismiss an indictment

> [i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial.

"Rule 48(b) only applies to delays following arrest." *United States v. Blanco,* 861 F.2d 773, 780 (2d Cir.1988); *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 462, 30 L.Ed.2d 468 (1971) (Rule 48(b) "clearly is limited to post-arrest situations").

Defendants' motion is based on the delay between February of 1993, when several other members of the Texas-based conspiracy were indicted, and July 24, 1996, when the indictments against Richards and Tarantola were unsealed. Tarantola was arrested and arraigned in February 1997. Richards remained a fugitive until July of 1999.

The delays in indictment took place before the defendants were arrested. The motion is groundless.

### IV

Defendants have also filed a flurry of discovery motions. Since their motions were filed, the government has provided additional discovery. To the extent that defendants' discovery motions are not moot, they are denied, except as noted below.

#### Lost File

Tarantola alleges that the government has "lost a file that should have been produced," and that the file "contains photographs that will exonerate him." He seeks

a hearing to explore whether loss of the file warrants dismissal of the indictment against him.

At the hearing on this motion on November 27, 1999, Tarantola accepted the government's representations that it had located the missing file and would to turn over to defendants any discoverable material contained therein. Tarantola has given no indication since then that the file is still missing, and makes no argument that he was prejudiced by any delay in locating the file.

The motion for hearing is denied, with leave to file additional motions in the event that the government has not and cannot locate the file in question.

### Rule 16 Material

Defendants seek an order compelling production of material to which they claim to be entitled under Federal Rule of Criminal Procedure 16. They submit a long list of such material and claim that "the bulk of discovery is still outstanding."

In the absence of specific refutation, the Court accepts the government's representations that it has already complied, in copious fashion, with the requirements of Rule 16.

### Brady and Giglio Material

Defendants move for an order compelling the production, prior to trial, of exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Under *Brady*, the government is constitutionally required to disclose evidence, upon request, that tends to exculpate the defendant. *Brady*, 373 U.S. at 88, 83 S.Ct. at 1197. *Giglio* requires disclosure of evidence affecting the credibility of a witness whose reliability may be dispositive of a defendant's guilt or innocence. *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.

The government asserts that it is aware of its *Brady* obligations and their ongoing nature, and that it has and will continue to comply with them. The court accepts these assurances in the absence of any "particularized showing of materiality and usefulness." *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir.1969); *United States v. Volpe*, 42 F.Supp.2d 204, 226 (E.D.N.Y.1999).

Defendants emphasize the need for timely disclosure of impeachment material, particularly as to cooperating witnesses. The government says it will produce any such material approximately one week before it calls any witnesses for whom such material exists.

Although *Brady* material and impeachment evidence generally need not be disclosed before trial, *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974), the court may order earlier disclosure in some circumstances, "particularly if [the *Brady* material] points to the existence of other evidence helpful to the defendant." *United States v. Crozzoli*, 698 F.Supp. 430, 436 (E.D.N.Y.1988).

The government says that most of its witnesses testified in two prior trials against members of the same conspiracy in which defendants allegedly took part. Defendants have had access for approximately two years to the trial transcripts of that testimony, which provides a "virtual road map of cross-examination" of the government's key witnesses.

Defendants motion for immediate production of impeachment material is denied. The government is directed to continue to fulfill its ongoing *Brady* obligations, and to provide any impeachment and exculpatory material sufficiently in advance of trial to allow the defense to use the information effectively in the preparation and presentation of its case.

### Jencks Act Material

Defendants also ask the court to compel pretrial production of statements and reports of government witnesses pursuant to the Jencks Act, 18 U.S.C. § 3500. Such material is available only after the pertinent witness has testified on direct exami-

nation. *See* 18 U.S.C. § 3500. The government has said it will produce any Jencks Act material at the time specified in the statute. The motion is denied. But the Court urges the government to produce such material early enough to avoid delay in the trial.

Defendants also seek an order requiring the government to preserve and produce notes of interviews with material witnesses, "whether or not those witnesses ... will be called at trial."

The government states that it has preserved and will continue to preserve all relevant notes; that notes relevant to witnesses it will call at trial will be produced along with other § 3500 material; and that it is not aware of any exculpatory material in any notes in its possession. Neither 18 U.S.C. § 3500 nor *Brady* require anything more. Defendants motion is therefore denied.

## Confidential Informants

Defendants next seek an order compelling the government to make available "the confidential informants" for "questioning and taking depositions."

The government says it did not rely upon "confidential informants" but on cooperating witnesses who testified at the trials of other members of the Texas-based drug conspiracy. Both the identity of these witnesses and the nature of their testimony are, or should be, well known to defendants through the transcripts of the earlier trials. In addition, before these witnesses testify at the upcoming trial, defendants will have full access to all impeachment material.

The government has declined to provide the addresses of its cooperating witnesses, but has offered to convey to these witnesses any specific requests by defendants for interviews. Defendants apparently have made no such requests. The Court will consider any future requests in due course. Until then, defendants' motion for "production" of "confidential informants" is denied.

## Grand Jury Information

Defendants also seek "certain information which would reveal ... structural or prejudicial irregularities involving the grant jury." Among other things, they seek the dates on which the grand jury was empaneled and adjourned, instructions provided before the indictments were returned, voting records, transcripts of the return of the indictment, and the names of persons other than jurors, witnesses, court reporters and prosecutors present in the grand jury room.

Alternatively, defendants ask the court to "inspect the grand jury minutes and records relating to each grand juror's qualifications ..., attendance, and voting record to ensure that the structural protections of that body were honored."

Federal Rule of Criminal Procedure 6(e)(3)(C)(ii) authorizes the court to permit disclosure of information regarding grand jury proceedings "at the request of the defendant[,] upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

█ "The strong presumption of regularity in grand jury proceedings cannot be outweighed by purely conclusory or speculative allegations of misconduct." *United States v. Ferrara*, 990 F.Supp. 146, 152 (E.D.N.Y.1998); *see United States v. Abcasis*, 785 F.Supp. 1113, 1120 (E.D.N.Y. 1992).

█ Defendants argue that the information they seek could provide the basis for a motion to dismiss under Federal Rule of Criminal Procedure 12(b)(1) on the basis of "defects in the institution of the prosecution." The only specific basis for this suspicion is the "three-year delay in presenting this case to the grand jury," which defendants say renders "timing issues concerning the grand jury ... crucial."

The delay in question was between the return of indictments against defendants' alleged co-conspirators in the Texas-based drug ring and the return of the instant indictments. There is no indication of any

irregularity in the grand jury proceedings themselves or any other aspect of the "institution of the prosecution." Fed.R.Crim. Pro. 12(b)(1).

In any event, defendants' allegations of misconduct or irregularity are far too speculative to overcome the "strong presumption of regularity in grand jury proceedings." *Ferrara*, 990 F.Supp. at 152. The motion is denied.

*Additional Discovery Requests*

Defendants next request production of any evidence the government intends to introduce pursuant to Federal Rules of Evidence 404(b).

Rule 404(b) permits the introduction of evidence of other crimes, wrongs or acts in order to show such things as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The government, upon request by the defendant, must provide notice of the general nature of such evidence, generally before trial. *See* Fed.R.Evid. 404(b). The rule does not entitle defendants to pretrial production of the prior acts evidence itself.

The government is directed to comply with Rule 404(b) and provide defendants with notice of the general nature of any prior acts evidence it plans to introduce sufficiently in advance of its proffer to permit defendants to respond.

Defendants also move for pretrial production of evidence the government seeks to introduce under former Federal Rules of Evidence 803(24) and 804(b)(5), which are now consolidated under Rule 807.

Rule 807, the residual hearsay exception, allows introduction of evidence not specifically deemed admissible under the hearsay rules but "having equivalent circumstantial guarantees of trustworthiness." Fed. R.Ev. 807. No such statement may be introduced unless its proponent gives notice to the adverse party in advance of trial.

The government is hereby directed to provide sufficient notice of evidence it may introduce under Rule 807.

Finally, defendants seek production of any statement the government plans to introduce under Federal Rule of Evidence 801(d)(2), which allows introduction of a party's statements against that party under specified circumstances. Defendants say they are entitled to such statements by Federal Rule of Evidence 104, which governs the Court's consideration of preliminary questions regarding the admissibility of evidence.

To the extent that any statements covered under Rule 801(d)(2) are discoverable under Rule 16, *Brady, Giglio,* or § 3500, they are addressed above. To the extent that defendants seek discovery of statements outside the scope of those rules, they have made no showing and cited no authority supporting their entitlement to such statements. This aspect of defendants' motion is denied.

*Bill of Particulars*

Tarantola seeks a variety of information in the form of a bill of particulars. Richards joins this motion but has not submitted papers specifying which aspects of his indictment require elaboration or clarification.

 The purpose of a bill of particulars is to ensure that the defendant adequately understands the nature of the charges against him so he can prepare his defense and plead double jeopardy if subsequently prosecuted for the same offense. *Wong Tai v. United States*, 273 U.S. 77, 80 – 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927). A bill of particulars is required only when the charges in the indictment are cast so generally that they do not advise the defendant of the specific acts with which he is charged. *See United States v. Schwimmer*, 649 F.Supp. 544, 550 (E.D.N.Y.1986).

██ "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortnovsky*, 820 F.2d 572,

574 (2d Cir.1987); *see United States v. Crozzoli,* 698 F.Supp. 430, 435–36 (E.D.N.Y.1988).

■ A bill of particulars is not a discovery tool and is not intended to allow a defendant a preview of the evidence or the theory of the government's case. *See Bortnovsky,* 820 F.2d at 574. The government need not describe "the precise manner in which the crime ... is alleged to have been committed." *United States v. Andrews,* 381 F.2d 377, 377–78 (2d Cir. 1967).

■ As to both counts of his indictment, Tarantola requests (i) the times and places at which the alleged conspiracy was formed, at which Tarantola allegedly joined the conspiracy, and at which he allegedly conspired to possess and distribute marijuana; (ii) the names of the persons with whom he allegedly conspired; (iii) the amount of marijuana he allegedly conspired to possess and distribute; and (iv) the amount and "type" (*i.e.,* "whether cash or otherwise") of money allegedly paid or received in connection by Tarantola with the conspiracy.

Many of these requests go beyond the scope of information to which defendants are entitled via a bill of particulars. For instance, defendants are not necessarily entitled to learn the names of unindicted coconspirators, *see United States v. Gotti,* 784 F.Supp. 1017, 1018 (E.D.N.Y.1992), or the precise "date and manner in which a conspiracy was formed, or when each defendant entered into a conspiracy." *United States v. Leonard,* 817 F.Supp. 286, 301 (E.D.N.Y.1992).

This is particularly true where, as here, defendants have access to these details through discovery material and other representations by the government. *United States v. Torres,* 901 F.2d 205, 233–34 (2d Cir.1990); *United States v. Schwimmer,* 649 F.Supp. 544, 551 (E.D.N.Y.1986). The government says it. has provided transcripts of earlier trials involving the same conspiracy and extensive discovery material regarding its investigation of Tarantola and Richards.

In addition, in support of its motion to try these defendants together, the government has "set forth in some detail its version of the factual backdrop of this case." *United States v. Leonard,* 817 F.Supp. 286, 301 (E.D.N.Y.1992).

Any vagueness or lack of detail in the indictments has been more than remedied through the provision of discovery materials and other pretrial representations. To the extent the defendants' motion for a bill of particulars seeks information not available from these sources, it constitutes an "ill-disguised attempt [ ] at general pretrial discovery." *Torres,* 901 F.2d at 234. The motion is denied.

### V

The government's motion to consolidate the two cases for trial is granted. Defendants' motions to dismiss the indictment and for production of various discovery materials are denied, except as otherwise noted in this Memorandum and Opinion.

So ordered.