**UNITED STATES of America,**
**Appellee,**

v.

**Thomas FITZGERALD, Defendant–**
**Appellant.**

**Docket No. 99–1548.**

United States Court of Appeals,
Second Circuit.

Argued: June 2, 2000
Decided: Nov. 15, 2000

Bruce A. Barket, Garden City, NY, for Appellant.

Robert J. Cramer, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Robin W. Morey, Stanley J. Okula, Jr., Baruch Weiss, Ira M. Feinberg, Assistant United States Attorneys, New York, NY, of counsel) for Appellee.

Before: McLAUGHLIN, PARKER, Circuit Judges, and DORSEY, District Judge.*

PER CURIAM:

Thomas Fitzgerald appeals from the judgment of conviction and sentence of the United States District Court for the Southern District of New York (Richard Owen, Judge) entered September 13, 1999, after a six-day trial before the Honorable Richard Owen and a jury. Fitzgerald was charged with three counts of tax evasion, thirteen counts of mail fraud, and one count of

---

* The Honorable Peter C. Dorsey, of the United States District Court for the District of Connecticut, sitting by designation.

conversion. The district court severed the mail fraud and conversion counts and proceeded to trial on the tax evasion counts. Fitzgerald was convicted of three counts of tax evasion for the years 1990, 1991, and 1992, in violation of 26 U.S.C. § 7201. Before proceeding to trial on the severed mail fraud and conversion charges, the district court held a pre-sentencing hearing pursuant to *United States v. Fatico*, 458 F.Supp. 388 (E.D.N.Y.1978), *aff'd*, 603 F.2d 1053 (2d Cir.1979), and enhanced Fitzgerald's sentence for tax evasion based on findings of mail fraud and conversion. Fitzgerald challenges this enhancement of his sentence. On this issue, we find that the district court applied the United States Sentencing Guidelines improperly, and therefore we vacate and remand for resentencing.[1] We have considered the appellant's other arguments, and we find them to be without merit.

## I. BACKGROUND

Following Fitzgerald's conviction on all three tax evasion counts, the district court, without objection by Fitzgerald, set a sentencing date for the tax charges in advance of trial on the severed mail fraud and conversion charges. The district court subsequently granted the Government's request for a pre-sentencing hearing pursuant to *United States v. Fatico*, 458 F.Supp. 388 (E.D.N.Y.1978), *aff'd*, 603 F.2d 1053 (2d Cir.1979). The Government requested this hearing for the purpose of introducing evidence that: (1) in addition to the federal income tax he evaded from 1990–1992, Fitzgerald also evaded $74,607 in New York State and New York City income taxes for the same period, which amounts constituted relevant conduct pursuant to U.S.S.G. § 1B1.3 (1992);[2] (2) Fitzgerald had obstructed justice by committing perjury at trial, thus warranting a two-level enhancement to his base offense level pursuant to U.S.S.G § 3C1.1; and (3) Fitzgerald had failed to report more than $10,000 from criminal activity during the 1992 tax year, thus warranting a further two-level enhancement to his base offense level under U.S.S.G § 2T1.1(b)(1).

Following the *Fatico* hearing, the district court found that from 1990–1992 Fitzgerald evaded $74,607 in New York State and City income taxes. These state and city tax losses were included as relevant conduct pursuant to U.S.S.G. § 1B1.3 in determining Fitzgerald's base offense level under U.S.S.G. § 2T1.1, and therefore were added to Fitzgerald's 1990–1992 federal income tax liability of $175,589 for a total unpaid tax liability (loss) of $250,196. The district court then found that a two-level enhancement of the base offense level was warranted under U.S.S.G. § 2T1.1(b)(1) because Fitzgerald had failed to report more than $10,000 from criminal activity in 1992. More specifically, the district court found by clear and convincing evidence that in 1992, Fitzgerald had intentionally converted $107,339 from the Mason Tenders District Council Welfare Fund (the "Welfare Fund") and defrauded medical specialists of those funds. The district court determined that Fitzgerald knew the medical specialists were not being paid for a period of several months, during which time Fitzgerald deposited the specialists' checks from the Welfare Fund into an account over which he retained exclusive authority. The district court also concluded that Fitzgerald improperly advised the medical specialists to seek payment from the Welfare Fund, thus causing the Welfare Fund to pay twice for the specialists' services. Finally, the district court found that Fitzgerald

---

1. Appellant also raised the issue of the applicability of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to his case. We need not address *Apprendi* here, however, because we consider it appropriate for consideration by the district court in the first instance, on remand.

2. The 1992 Guidelines apply to Fitzgerald's sentence. *See infra.* Hereinafter, all references to the Guidelines will be to the 1992 version.

had obstructed justice by committing perjury at trial and at the sentencing hearing.

The governing tax guideline is § 2T1.1 (Tax Evasion). At sentencing, the district court found Fitzgerald's base offense level to be fourteen. This offense level is based on the finding, which we affirm, that the state and city tax evasion should be counted as part of the total tax loss, which increases the tax loss from $175,589 to over $200,000. *See* U.S.S.G. § 2T4.1 (tax table). The district court added two points for obstruction of justice pursuant to § 3C1.1. Because Fitzgerald received more than $10,000 from criminal activity, the district court added two points pursuant to § 2T1.1(b)(1).[3] The total tax offense level was therefore eighteen.

Next, the district court determined the offense levels for conversion and mail fraud to be fourteen each. The district court then did a grouping analysis under § 3D1.2(d), grouping the theft and mail fraud because "the offense level is determined largely on the basis of the total amount of harm or loss." U.S.S.G. § 3D1.2(d). Because the offense levels for the theft and mail fraud are the same, this grouping and application of § 3D1.3(d) resulted in an offense level of fourteen.

The district court then noted that the tax offenses counted as one group and that the theft and mail fraud offenses counted as a separate group, but the district court concluded that the two groups could not be grouped together. Thus the district court applied U.S.S.G § 3D1.4, counting the tax evasion group as one unit and the theft/mail fraud group as one unit, to reach two units. For two units, the guidelines require the addition of two levels to the group with the highest offense level, here the tax offense level of eighteen, for a total offense level of twenty. *See* U.S.S.G. § 3D1.4 (a) ("Count as one Unit the Group with the highest offense level. Count one additional unit for each Group that is

equally serious or from 1 to 4 levels less serious."). The district court then sentenced Fitzgerald based on an offense level of twenty.

## II. DISCUSSION

■ We review the district court's interpretation and application of the Guidelines *de novo* and its findings of fact for clear error. *See United States v. Zagari,* 111 F.3d 307, 323 (2d Cir.1997). Appellant Fitzgerald challenges the district court's conclusion that his conversion and mail fraud should be characterized as relevant conduct to his tax evasion. Fitzgerald also challenges the enhancement of his sentence based on this finding of relevant conduct. We affirm the district court's findings of fact, and we do not disturb most of the court's conclusions of law. The district court properly applied the sentencing guidelines to (1) add Fitzgerald's federal tax liability to his state and local tax liability, (2) enhance Fitzgerald's sentence by two levels based on his failure to report more than $10,000 of income received from criminal activity, and (3) enhance Fitzgerald's sentence by two levels based on his obstruction of justice. The district court erred, however, in the manner in which it took into account the relevant conduct of mail fraud and conversion.

■ The district court was correct to apply the 1992 version of the Guidelines in this case. Generally, a district court should apply the version of the Guidelines in effect on the date of sentencing. *See* 18 U.S.C. § 3553(a)(4); U.S.S.G. § 1B1.11(a).

> However, where application of the Guidelines in effect at sentencing would result in a more severe sentence than the version in effect at the time of the commission of the offense, the Ex Post Facto Clause ... requires use of the earlier version of the Guidelines. The

---

**3.** Fitzgerald "failed to report or to correctly identify the source of" $107,339 of income derived from the fraud committed on the Wel-

fare Fund and its medical specialists. U.S.S.G § 2T1.1(b)(1).

last date of the offense, as alleged in the indictment, is the controlling date for ex post facto purposes.

*United States v. Broderson,* 67 F.3d 452, 456 (2d Cir.1995) (internal citations omitted). Furthermore, the district court should apply that version of the Guidelines "in its entirety." U.S.S.G. § 1B1.11(b)(2); *see United States v. Keller,* 58 F.3d 884, 890 (2d Cir.1995) ("A version of the sentencing guidelines is to be applied in its entirety. A sentencing court has no authority to pick and choose, taking one provision from an earlier version of the guidelines and another from a later version."). Since Fitzgerald was indicted and convicted for evading his 1990–1992 taxes, and the Guidelines have (since 1992) increased the penalty for the amount of tax loss caused by Fitzgerald, *see* U.S.S.G. § 2T4.1 (1998 Tax Table), the 1992 Guidelines apply here.

Relevant conduct is defined by U.S.S.G. § 1B1.3(a)(1)(A) to include acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G § 1B1.3(a)(1)(A). Section 1B1.3(a)(2), which applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts ...."[4] defines relevant conduct more broadly to include "all acts and omissions described in ... [§ 1B1.3(a)(1)(A) ] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Therefore, the definition of relevant conduct in U.S.S.G. § 1B1.3(a)(2) includes offenses that, first, must be grouped under § 3D1.2(d) and, second, are acts or omissions that are closely related to the offense of conviction.

We must determine which definition of relevant conduct applies in this case.

■ Because U.S.S.G. § 1B1.3(a)(2) defines relevant conduct in terms of the grouping rules of § 3D1.2(d), a good first step is to determine whether or not tax evasion and fraud/conversion should be grouped under § 3D1.2(d). Contrary to what the district court concluded, the reasoning of *United States v. Napoli,* 179 F.3d 1 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000), indicates that Fitzgerald's tax evasion, fraud, and conversion should be grouped under § 3D1.2(d), and therefore U.S.S.G. § 1B1.3(a)(2)'s definition of relevant conduct applies.

The *Napoli* court held that fraud and money laundering could *not* be aggregated under § 3D1.2(d). 179 F.3d at 8–13.[5] *Napoli* recognized, however, that the most promising argument for grouping under § 3D1.2(d) was that the guidelines for both fraud and money laundering measured harm in monetary values. *Id.* at 9 (relying on § 3D1.2(d) and on the Introductory Commentary to Chapter 3, Part D). An inspection of the Guidelines for tax evasion, fraud, and conversion indicates that all of these offenses measure the harm by reference to the amount of monetary loss. *See* U.S.S.G. §§ 2T4.1 (tax evasion), 2F1.1 (fraud), 2B1.1 (conversion).

*Napoli* also indicates that grouping is appropriate when the offenses to be grouped are of the "same general type." 179 F.3d at 10 (quoting U.S.S.G. § 3D1.2 application n. 6). Although the Guidelines do not include a specific definition of same general type, "Application Note 3 to § 3D1.3 explains that the guidelines for similar property offenses, which are all of the 'same general type,' 'have been coordi-

---

4. U.S.S.G. § 3D1.2(d) requires grouping for offenses whose "offense level is determined largely on the basis of the total amount of harm or loss...."

5. *Napoli* held that fraud and money laundering should not be aggregated because while

the offense level for fraud is based primarily on the amount of money involved, the offense level for money laundering is based instead "primarily on the base offense level, which reflects society's disapprobation of the activity." *Id.* at 11.

nated to produce identical offense levels, at least when substantial property losses are involved.'" *Id.* at 11 (quoting Application Note 3 of U.S.S.G. § 3D1.3). Furthermore, the guidelines for offenses that are of the "same general type" apply "tables that translate the amount of 'losses' involved into specific offense level increases at exactly the same rate, and at exactly the same monetary division points." *Id.* at 11. With this guidance in mind, we must determine if tax evasion, fraud, and conversion should be characterized as being of the "same general type."

For Guidelines purposes, we direct this inquiry to the offense level tables for tax evasion, fraud, and conversion. These offenses have tables that increase at the same rate and use the same monetary division points. *See* U.S.S.G. §§ 2T4.1 (tax evasion), 2F1.1 (fraud), 2B1.1 (conversion).[6] The only real difference between the tables for tax evasion, fraud, and conversion appears to be how each table reaches its calculation of an offense level. While the tax evasion table refers exclusively to the amount of tax loss to calculate an offense level, the tables for fraud and conversion set a base offense level of six and four, respectively, and then increase the offense level by reference to the amount of monetary loss. Despite this slightly different approach, the resulting offense levels for the same amount of monetary loss are identical if the loss is more than $2,000. The unity of the offense tables for tax evasion, fraud, and conversion leads us to conclude that they are offenses of the same general type.

We hold that tax evasion, fraud, and conversion should be grouped under U.S.S.G. § 3D1.2(d). Because the tax eva-

sion, fraud, and conversion offenses are properly grouped under § 3D1.2(d), Fitzgerald's fraud and conversion constitute relevant conduct under § 1B1.3(a)(2) so long as the fraud and conversion are found to be an act or omission "described in subdivision (1)(A) ... that were part of the same course of conduct or common scheme or plan as the offense of conviction."[7] As the government argues, there was a close relationship between Fitzgerald's fraud and conversion and his tax evasion.

Fitzgerald failed to report income tax from 1990–1992. A large portion of the income that Fitzgerald failed to report in 1992 was derived directly from the fraud and conversion that he committed in the same year. Thus, Fitzgerald committed fraud and conversion with no intention of paying income tax on the money that he received illegally. In fact, his fraud and conversion occurred "during" the same year as his tax evasion and "in preparation for" his tax evasion. In further support of this conclusion, the record shows that Fitzgerald created an account over which he retained exclusive control for the purpose of defrauding the Welfare Fund and for the purpose of hiding the income from the Internal Revenue Service. Therefore, the circumstances surrounding Fitzgerald's fraud and conversion support the view that they were part of the same plan as his tax evasion and do constitute relevant conduct.

Because we find that Fitzgerald's fraud and conversion are properly treated as relevant conduct to his offense of conviction under § 1B1.3(a)(2), the correct analysis does not include a multi-count approach under U.S.S.G. § 3D1.4, but instead aggre-

---

6. For example, under the 1992 Guidelines, the offense level for conversion of more than $200,000 is fourteen; the offense level for fraud resulting in a monetary loss of more than $200,000 is fourteen; and the offense level for a tax loss over $200,000 is fourteen. Also, the tables for all three offenses increase in lockstep once the amount of loss attributable to the specific offense is more than $2,000. *See* U.S.S.G. §§ 2T4.1, 2F1.1, 2B1.1.

7. Subdivision (1)(A) requires that an act or omission occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A).

gates the loss attributable to all of Fitzgerald's offenses and yields an offense level of nineteen. U.S.S.G. § 3D1.3(b). We need not decide, therefore, whether it is proper to do a multi-count analysis where the relevant conduct could not be grouped with the counts of conviction.[8]

The loss attributable to all of Fitzgerald's offenses is $357,535 ($175,589 in federal tax losses, $74,607 in state and local tax losses; and $107,339 in fraud/conversion losses). Pursuant to U.S.S.G. § 3D1.3(b), we refer to U.S.S.G. § 2T1.1(a) and § 2T4.1(J), which indicate that a loss of more than $350,000 yields an offense level of fifteen. Next, Fitzgerald's offense level should be enhanced by two levels because of his failure to report more than $10,000 of criminally derived income. *See* U.S.S.G. § 2T1.1(b)(1). Finally, Fitzgerald's offense level must be enhanced by two more levels because of his obstruction of justice, which took the form of perjury at trial and the sentencing hearing. *See* U.S.S.G. § 3C1.1.

### III. CONCLUSION

For the reasons stated above, we vacate and remand for resentencing that is consistent with the reasoning of this opinion. The district court may address any issues concerning the applicability and impact of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), assuming they are raised on remand.

---

**8.** In *United States v. Dawson*, 1 F.3d 457, 464 (7th Cir.1993), the Seventh Circuit held that it was improper to employ the Guidelines' multi-count analysis for conduct that is not itself an offense of conviction, unless the conduct can be aggregated with the offense of conviction under § 3D1.2(d).