UNITED STATES of America,
Appellee,

v.

John DAVIS, a/k/a "Johnny Davis"; Fyndle Broks, also known as Thindle Brooks; Terry Kaplan; and Martha Kaplan, Defendants–Appellants,

Jerry Richardson, a/k/a "Jabbo", Goldie Willoughby, Freddie Young, also known as Amos Miller, also known as Dickie, Defendants.

Docket Nos. 00–1282(L), 00–1307, 00–1728, 01–1171.

United States Court of Appeals,
Second Circuit.

June 25, 2002.

Martin R. Stolar, New York, NY, for Appellant Terry Kaplan.

Lawrence Mark Stern, New York, NY, for Appellant Martha Kaplan.

Kim A. Berger, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, Jamie L. Kogan, Christine H. Chung, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

Present WALKER, Chief Judge, MINER and CABRANES, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendants-appellants Terry and Martha Kaplan appeal from the judgments entered by the district court (Stein, *D.J.*) on October 27, 2000 and March 26, 2001, respectively.[1] After a jury trial, the Kaplans were convicted of one count of conspiracy to transport, receive, possess and sell stolen property, in violation of 18 U.S.C. § 371, and one count of the receipt, possession and sale of stolen property, in violation of 18 U.S.C. §§ 2315 and 2.

On appeal, Martha Kaplan principally argues that (1) her trial counsel's performance constituted ineffective assistance of counsel; and (2) the district court's conscious avoidance instruction regarding the defendant's knowledge of the stolen nature of the property was plainly erroneous. She also contends that (1) the evidence was insufficient to prove her knowledge and intent to participate in the conspiracy; (2) the district court's conspiracy charge was plainly erroneous; and (3) the district court erred in calculating the loss attributable to her because neither the jury nor the district court made a specific finding regarding the duration and scope of her participation in the conspiracy.

On appeal, Terry Kaplan principally argues that the district court's calculation of the loss was clearly erroneous because its methodology was flawed. He also contends that (1) the introduction of evidence regarding his possession of a stolen Monet pastel and an allegedly stolen gun pursuant to Fed.R.Evid. 404(b) was unduly prejudicial; (2) the district court erred by denying defendant's motion to suppress the evidence regarding the gun; and (3) the district court abused its discretion by failing to declare a mistrial after a witness stated at trial that defendant had sexually abused him as a child. Each appellant

---

1. Counsel for defendant-appellant Fyndle Brooks, whose name was misspelled in the original caption, has filed *Anders* motion requesting to be relieved as counsel, and the government has filed a motion for summary affirmance for Brooks. We have granted those motions by separate order.

also adopts various arguments made by the other appellant.

Viewing the evidence in the light most favorable to the government, *see United States v. McDermott*, 245 F.3d 133, 136 (2d Cir.2001), the evidence at trial established that during the 1980s and between 1994 and 1996, the Kaplans knowingly and intentionally bought goods stolen by John Davis and his crew of burglars from residences in New Jersey and Long Island. During the relevant period, Martha and Terry Kaplan were married and owned and managed the Dorar Corporation, a second-hand store. Both Kaplans bought goods directly from Davis and failed to keep any record of the transactions with Davis, except on small pieces of paper that were regularly shredded. The goods Davis sold to the Kaplans included jewelry, flatware, coins, electronic equipment and fur coats. Initials on jewelry sometimes matched monograms on the flatware and the coins were often contained in their original mailing boxes bearing the victims' names and addresses on them. The quantity and quality of the goods sold by Davis were much higher than that of the Kaplans' legitimate customers.

■ Martha Kaplan's primary ineffective assistance claim is based on her trial counsel's failure to introduce evidence that she was dedicated to curing her husband's addiction to drugs, was suffering from depression, and had dyslexia and impaired English and math skills. According to Martha Kaplan, such evidence would have rebutted the evidence of her knowledge of the stolen nature of the goods and her intent to participate in the conspiracy. Given the substantial evidence of the defendant's knowledge and active participation in the conspiracy, defendant fails to establish that the error, if any, would have resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–89, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Evidence of Martha Kaplan's knowledge and intent to participate in the conspiracy included her continued friendship with Davis after she found out that he sold her a stolen bracelet, the indicia of the illegal origin of the goods, the discounts she negotiated with Davis for furs that contained linings with the owners' names on them, the unusually high quality and quantity of the goods, and Harvey Kaplan's statement made in her presence to Davis concerning burglary tools he discovered in one of the bags containing the goods.

Martha Kaplan further contends that the conscious avoidance instruction regarding her knowledge of the stolen nature of the property was improper because (a) the factual predicate establishing her conscious avoidance was insufficient; (b) the district court erroneously instructed the jury that she could be found guilty if a reasonable person would have known that the goods were stolen, and (c) the district court failed to instruct the jury that conscious avoidance could not establish knowledge for the purposes of the conspiracy and aiding and abetting counts. Martha Kaplan concedes that her counsel failed to object to these particular aspects of the charge at trial, and thus we review these claims for plain error. *See United States v. Weintraub*, 273 F.3d 139, 145 (2d Cir. 2001).

■ A conscious avoidance instruction "may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, and (2) the appropriate factual predicate for the charge exists, i.e., the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt .... that [the defendant] was aware of a high probability [of the stolen nature of the goods] and consciously avoided confirming that fact." *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir.2000) (citations and internal

quotation marks omitted, last alteration differs from original). Martha Kaplan's defense was based on her lack of knowledge and intent, and the factual predicate for the charge was amply provided by the indicia of the illegal source of the goods; Terry Kaplan's disclaimers to his customers in front of Martha that he would claim to have never seen the goods if his customers had any problems with them; and Harvey Kaplan's statement upon discovering the burglary tools.

■ Although we find that a single statement in the district court's charge may have erroneously suggested that Martha Kaplan's guilty knowledge could be established if an ordinary person would have known the goods had been stolen, the district court repeatedly stated that the jury must find that each defendant "deliberately", "intentionally", "willfully" and with "conscious purpose" avoided knowledge of the stolen nature of the goods. Thus, read as a whole, the jury instruction adequately informed the jury of the proper legal standards. *See United States v. Vebeliunas*, 76 F.3d 1283, 1290–91 (2d Cir. 1996). Turning to the final argument regarding the conscious avoidance charge, we find that the district court's instructions made clear that the government had the burden of proving that defendant acted with specific intent to participate in the conspiracy and to aid and abet others in the receipt and sale of stolen goods. *Id.*

■ Finally, reviewing the district court's factual determination of loss for clear error, *see United States v. Fitzgerald*, 232 F.3d 315, 318 (2d Cir.2000) (per curiam), we affirm. Under the Sentencing Guidelines in effect at the time the Kaplans were sentenced, loss "need not be determined with precision" and may be estimated based upon "the approximate number of victims and the average loss to each victim, or on more general factors such as the scope and duration of the

offense." U.S.S.G. § 2B1.1, cmt. 3 (1998). In keeping with this application note, this Circuit has affirmed loss determinations extrapolated from an average loss amount based on known data in cases where the instances of theft, embezzlement or fraud are numerous. *See, e.g., United States v. Bryant*, 128 F.3d 74, 76 (2d Cir.1997) (per curiam).

In this case, the district court calculated an annual average loss ($760,000) based on two years' worth of losses and then multiplied that average by the number of years that each defendant participated in the conspiracy. Terry Kaplan's involvement in the 1980s was estimated to be 7.5 years during the 1980s (1982 to mid–1989) and two years in the 1990s (June 1994–July 1996), amounting to a loss of $6.31 million. Martha Kaplan's involvement in the 1980s was estimated to be 4.5 years (January 1985 to mid–1989) and two years in the 1990s (June 1994–July 1996), amounting to a loss of $4.03 million.

Terry Kaplan's primary objection to the district court's methodology is that the extrapolation method should not have been applied to his activities during the 1980s. However, two years of losses is a sufficiently large sample size to serve as a proxy for his participation in the conspiracy over nine and one-half years. *Id.* (approving of a 20% sample for extrapolation purposes). In addition, we find that the government's substantial concessions in favor of the defendants, most notably the government's decision to calculate the annual average loss by dividing the two-year aggregate by three, ensured that the loss calculation would be reasonable despite any minor deficiencies in the factual background regarding the level of activity during the 1980s. *See United States v. Sutton*, 13 F.3d 595, 599–600 (2d Cir.1994) (per curiam).

We have carefully considered the other arguments made and find them to be without merit.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.