**UNITED STATES of America, Appellee,**

v.

**Linda SUTTON, Defendant–Appellant.**

**No. 729, Docket 93–1458.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1993.

Decided Jan. 10, 1994.

Lisa Scolari, New York City, for defendant-appellant.

Jonathan N. Halpern, Asst. U.S. Atty., S.D.N.Y., New York City (Mary Jo White, U.S. Atty. S.D.N.Y., Alexandra Rebay, Asst. U.S. Atty. S.D.N.Y., New York City of counsel), for appellee.

Before: MAHONEY and WALKER, Circuit Judges, and EGINTON,* District Judge.

PER CURIAM:

Defendant-appellant Linda Sutton appeals from a judgment of conviction entered June 17, 1993 after a jury trial in the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge.* Sutton was charged in a three-count indictment with conspiracy to produce and transfer false identification documents in violation of 18 U.S.C. § 371 (1988) (count one), unlawful production and transfer of false identification documents in violation of 18 U.S.C. § 1028(a) (1988) (count two), and mail fraud in connection with the mailing of the false identification documents in violation of 18 U.S.C. § 1341 (1988 & Supp. II 1990). The jury was unable to reach a verdict on the conspiracy charge, and the court accordingly dismissed count one. The jury convicted Sutton on counts two and three.

From 1988 to 1991, Sutton was employed by the New York State Department of Motor Vehicles ("DMV") in its Brooklyn district office as a motor vehicle representative. Among other duties, Sutton processed applications for driver's licenses and nondriver identification cards. Sutton also processed applications for "reciprocal" driver's licenses, which are issued when a person holding a valid out-of-state driver's license surrenders that license in exchange for a New York State driver's license.

Beginning in approximately August 1990 and continuing until December 1991, Sutton fraudulently processed applications for reciprocal driver's licenses in return for cash bribes. Sutton enlisted the assistance of several middlemen who steered clients to her station at the Brooklyn DMV office. There, for a fee ranging from $80 to $1,500, Sutton would falsely note on an application that the applicant had presented adequate identification and surrendered a valid out-of-state driver's license. The applications were then sent from the Brooklyn DMV office to the DMV headquarters in Albany for processing, from which the driver's licenses were mailed to the applicants' mailing addresses. Most of the applicants serviced by Sutton received their licenses at addresses within the Eastern District of New York (the "Eastern District"). However, approximately six license applications processed by Sutton resulted in the mailing of licenses to addresses within the Southern District of New York (the "Southern District"). Further, Sutton stipulated that one license was actually received there.

Prior to jury selection, the government and Sutton's trial counsel, Valerie S. Amsterdam, stipulated that "venue is agreed to be in the Southern District of New York and is not an issue at trial." The pretrial colloquy regarding that stipulation concerned whether the government would be required to submit proof of a mailing to an address in the Southern District. Amsterdam stated that she

---

* The Honorable Warren W. Eginton, United States District Judge for the District of Connecticut, sitting by designation.

would not require such proof, and explicitly stated that she would stipulate to venue on all three counts of the indictment.

During the trial, however, Amsterdam sought to withdraw her stipulation and contest venue as to counts one and two. (Sutton concedes venue as to count three.) Amsterdam argued that she had only stipulated as to venue to save the prosecution the trouble of "having to call the postal authorities." Amsterdam argued that "as the evidence ha[d] unfolded," it had become clear that "even if Ms. Sutton caused documents to be transported in the mail the action of causing it to be transferred in the mail took place in the Eastern District. It didn't take place in the Southern District."

The district court ruled that Sutton had waived venue objections by her pretrial stipulation regarding that issue. The district court also ruled, citing 18 U.S.C. § 3237 (1988),[1] that the offense of producing and transferring false licenses was a continuing offense that could not be completed until the false licenses were received by the individuals in question. The court then concluded that the government had established venue as to count two based upon its showing that fraudulently procured driver's licenses had been mailed to applicants at addresses in the Southern District. Accordingly, the district court denied Amsterdam's request that the jury be instructed on venue.

After Sutton's conviction, the district court sentenced her under USSG § 2F1.1, which specifies a base offense level of six. In estimating the amount of loss attributable to Sutton's crimes under that guideline, the court considered a total of 161 applications processed by Sutton. Of this number, 109 had been introduced at trial, including 107 reciprocal license applications filed by various persons and two nondriver identification applications submitted to Sutton by an un-

dercover police officer. The remaining 52 were reciprocal license applications that the government proffered after trial, stating that the DMV had identified the documents as having been processed by Sutton during the period covered by the indictment. According to the government, the DMV had concluded that although each of these applications indicated that the applicant had surrendered a valid out-of-state license, the states in question had never issued licenses to the applicants.

Testimony at trial indicated that the bribes license applicants paid to Sutton usually ranged from $750 to $1200, including the premiums paid to the middlemen. One witness testified that he paid only $80, including the intermediary's fee. One of the government's primary witnesses, who testified to acting as a middleman for between forty and fifty transactions, claimed that Sutton demanded a fee of $750. An undercover policeman testified to paying $200 for one nondriver identification card, and $250 for a second.

The district court estimated the total loss attributable to Sutton's scheme at $250 per license application, and multiplied that figure by 159 applications to arrive at a total of $39,750. The court then added $450 to account for the undercover officer's payments for nondriver identification cards, resulting in a total loss estimate of $40,200. Based upon this calculation, the district court added a five-level enhancement for specific offense characteristics under § 2F1.1(b)(1)(F). Finally, the court imposed a two-level enhancement pursuant to § 2F1.1(b)(2) for more than minimal planning. The total offense level of thirteen, combined with Sutton's criminal history category of I, yielded a sentence range of twelve to eighteen months. Reasoning that Sutton had abused her position of public trust, the judge sentenced Sutton to eighteen months incarceration, to be

---

1. Section 3237(a) provides:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

followed by three years of supervised release.

On appeal, Sutton argues that the district court erred by not submitting the question of venue to the jury. She contends that venue was not properly found in the Southern District because no false identification documents were produced or transferred from there. Sutton maintains that no testimony was produced at trial that fraudulently procured licenses were received in the Southern District, and that proof of such mailings would still not support venue there because receipt of mailings was not part of a continuing offense. Sutton further contends that her waiver of venue was not knowing and voluntary because she stipulated to venue based upon a misrepresentation by the prosecution that it would be able to prove venue. These arguments are unavailing.

A trial court need submit the issue of venue to the jury only when the question is "squarely interposed" by the defense. *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980); *cf. United States v. Winship*, 724 F.2d 1116, 1124–25 (5th Cir.1984) ("failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the instruction"). Because we conclude that Sutton did not interpose the question in a timely fashion, we hold that the district court did not err in failing to instruct the jury on venue.

From the very outset of this case, Sutton was on notice that the government considered venue to be established by receipt of driver's licenses in the Southern District. While count two of the indictment does not specify the actions by Sutton that gave rise to venue in the Southern District, count one (the conspiracy count) sets forth the government's basic theory of the case. *Cf. United States v. Price*, 447 F.2d 23, 27 (2d Cir.) (deeming defendant to be on notice of venue defects in substantive count of indictment because apparent from overt acts in conspiracy count), *cert. denied*, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). None of the six overt acts set forth in count one alleges Sutton's direct participation in any activities occurring outside the Eastern District. The only conceivable basis for venue

in the Southern District was provided by the allegation, with respect to two of those acts, that reciprocal driver's licenses were mailed to addresses in that district as a result of Sutton's fraudulent activities. Further, the pretrial colloquy among defense counsel, the government, and the court regarding the venue stipulation centered around proof of mailings to the Southern District, establishing that defense counsel was then aware of the government's theory of venue.

We therefore conclude that any asserted defects in venue were apparent at the time Sutton entered into the stipulation that waived the issue. It is settled law in this circuit that " 'a finding of waiver [of objections to venue] is proper ... when ... statements by the prosecutor clearly reveal this defect but the defendant fails to object.' " *United States v. Menendez*, 612 F.2d 51, 55 (2d Cir.1979) (quoting *Price*, 447 F.2d at 27); *see also United States v. Khan*, 821 F.2d 90, 93 (2d Cir.1987) (defects in venue apparent from face of indictment are considered waived if not raised prior to trial); *United States v. Levasseur*, 816 F.2d 37, 45 (2d Cir.1987) (same). A finding of waiver is especially appropriate when, as occurred in this case, the defendant not only fails to object to venue, but actually stipulates that venue exists until after the jury is empaneled and sworn.

In any event, because the production and transfer of false identification documents is a continuing offense, venue was proper in either the Eastern District or the Southern District. The Sixth Amendment provides that the accused in a criminal prosecution has the right to be tried in the "district wherein the crime shall have been committed." When a crime consists of a single discrete act, venue lies in the district where that act occurs. *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). However, venue for continuing offenses is governed by 18 U.S.C. § 3237(a) (1988), set forth *supra* at note 1.

Sutton was charged in count two with violating 18 U.S.C. § 1028(a). That statute provides, in pertinent part:

> Whoever, in a circumstance described in subsection (c) of this section—
>
> > (1) knowingly and without lawful authority produces an identification document or a false identification document; [or]
> >
> > (2) knowingly transfers an identification document or a false identification document knowing that such document was stolen or produced without lawful authority;
>
> ....
>
> or attempts to do so, shall be punished....

The first two "circumstance[s] described in subsection (c)," neither of which is implicated here, concern (1) identification documents that appear to be issued by or under the authority of the United States, and (2) the possession of unauthorized or false identification documents with intent to defraud the United States. *See* § 1028(c)(1)(2). The third specified circumstance applies to situations in which

> the production, transfer, or possession prohibited by this section is in or affects interstate or foreign commerce, or the identification document [or] false identification document ... *is transported in the mail* in the course of the production, transfer, or possession prohibited by this section.

§ 1028(c)(3) (emphasis added).

Because count two of the indictment charged Sutton with "caus[ing the] documents to be transported in the mail in the course of [their] production, transfer and possession ... in exchange for bribes," we conclude that this count alleged a continuing offense within the scope of § 3237(a), which expressly includes "[a]ny offense involving the use of the mails." *See supra* note 1; *cf. United States v. Maldonado–Rivera,* 922 F.2d 934, 968 (2d Cir.1990) (18 U.S.C. § 2314 states continuing offense because it prohibits "transport[ation] ... in interstate or foreign commerce" of goods or money obtained by fraud), *cert. denied,* —— U.S. ——, ——, 111 S.Ct. 2811, 2858, 115 L.Ed.2d 984 (1991); *United States v. Gilboe,* 684 F.2d 235, 238–39

(2d Cir.1982) (same), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). Accordingly, venue was proper in either the Eastern District, where Sutton initially processed the false applications, or in the Southern District, where some of Sutton's clients received their licenses by mail.

■ Sutton also argues that the proof upon which the district court based its loss estimate under USSG § 2F1.1 was insufficient, rendering the court's decision arbitrary. She contends that (1) there was no evidence that 52 of the 159 applications were fraudulent, and (2) the $250 estimated bribe per application was arbitrary, given evidence that one applicant paid only $80. These claims are meritless.

The commentary to § 2F1.1 specifies that loss

> need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.

USSG § 2F1.1, comment. (n. 8). "Facts in support of a sentencing calculation need only be proven by a preponderance of the evidence, and the district court's findings will not be disturbed unless clearly erroneous." *United States v. Beverly,* 5 F.3d 633, 642 (2d Cir.1993) (citing *United States v. Beaulieau,* 959 F.2d 375, 378–79 (2d Cir.1992)).

The evidence supported the district court's finding that the 52 reciprocal license applications were fraudulent. The applications indicated that Sutton had attached valid out-of-state licenses to the applications, but the states in question claim never to have issued licenses to the applicants. While, as Sutton contends, some of the 159 applications may have lacked necessary background documentation because of clerical errors rather than fraud, the district court explicitly took this

possibility into consideration in calculating loss by adopting a bribe estimate of $250 per application. This figure was far lower than that given by the overwhelming majority of testifying witnesses. We conclude that the district court's estimated loss of $40,200 was not clearly erroneous.

In accordance with the foregoing, the judgment of the district court is affirmed.