UNITED STATES of America, Appellee,

v.

Anthony BRYANT, Defendant–Appellant.

No. 336, Docket 96–1741.

United States Court of Appeals,
Second Circuit.

Oct. 14, 1997.

George S. Canellos, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, David Raymond Lewis, Assistant United States Attorney, New York City, on the brief), for Appellee.

James C. Neville, New York City, for Defendant–Appellant; Anthony Bryant pro se, Montgomery, Pennsylvania, filed a brief.

Before: KEARSE, MINER, and CABRANES, Circuit Judges.

PER CURIAM:

Defendant Anthony Bryant appeals from a judgment entered in the United States District Court for the Southern District of New York following a jury trial before John F. Keenan, *Judge,* convicting him on 22 counts of assisting in the preparation of false federal income tax returns, in violation of 26 U.S.C. § 7206(2) (1994), and sentencing him principally to 60 months' imprisonment, to be followed by a one-year term of supervised release. In computing Bryant's sentence under the Sentencing Guidelines ("Guidelines"), the district court set his base offense level at 22 pursuant to §§ 2T1.4(a)(1) and 2T4.1 on the ground that the loss caused by his frauds totaled "at least" $5,115,203. That figure was the sum of (a) $53,570 in tax losses attributable to the 22 returns that Bryant was convicted of falsifying, (b) $4,461,633 in losses suffered by the government on other tax returns prepared by Bryant that had been audited by the Internal Revenue Service ("IRS"), and (c) "at least" $600,000 in losses that the presentence report ("PSR") estimated the government to have suffered on returns prepared by Bryant that were not audited. On appeal, Bryant contends that the attribution to him of $600,000 in losses with respect to unaudited returns was speculative and unfair. In his *pro se* brief, Bryant also contends that he was unfairly denied access to the tax documents from which the $4,461,633 loss was calculated. Finding no merit in any of these contentions, we affirm.

█ In establishing sentencing tables that tie a defendant's offense level to the amount of loss caused by his offense, *see, e.g.,* Guidelines § 2T4.1 (loss caused by tax offenses); *id.* § 2B1.1(b)(1) (loss caused by theft offenses); *id.* § 2F1.1(b)(1) (loss caused by fraud offenses), the Guidelines do not require that the sentencing court calculate the amount of loss with certainty or precision. The § 2T1.1 commentary, which is applicable

to a violation of § 7206(2), states that "the amount of the tax loss may be uncertain," and it envisions that "indirect methods of proof [may be] used...." Guidelines § 2T1.1 Application Note 1. It states expressly that "the guidelines ·contemplate that the court will simply make a reasonable estimate based on the available facts." *Id.*

Similarly, the commentaries to § 2B1.1 and § 2F1.1 state that, for purposes of calculating the offense level for theft and fraud offenses, respectively, "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." Guidelines § 2B1.1 Application Note 3; *id.* § 2F1.1 Application Note 8. A § 2F1.1 "estimate, for example, may be based upon the approximate number of victims and an estimate of the average loss to each victim...." *Id.* In keeping with this philosophy, it is permissible for the sentencing court, in calculating a defendant's offense level, to estimate the loss resulting from his offenses by extrapolating the average amount of loss from known data and applying that average to transactions where the exact amount of loss is unknown. Thus, in *United States v. Sutton,* 13 F.3d 595, 596–97 (2d Cir.1994) (per curiam), where the defendant had received payments of $80–$1,500, usually in the $750–$1,200 range, for fraudulently issued driver's licenses, we found it not unreasonable for the sentencing court to compute the loss attributable to her scheme by estimating a payment of $250 per license and multiplying that sum by the total number of applications. *See id.* at 599–600.

We see .no reason why the same methodology may not be used in a § 7206(2) case in which, as here, the defendant has been. convicted of assisting in the preparation of numerous fraudulent tax returns, and government records show many more such instances. Although extrapolation might not be reasonable if, for example, there were few instances of fraud, or if the returns audited constituted a minuscule percentage of the total that the defendant prepared or in whose preparation he assisted, we see no unreasonableness here. The evidence at trial showed that in 1991–1993, Bryant ran an income-tax-refund "mill," preparing some tax returns in as little as three minutes, and routinely recording arbitrary deductions for his clients with no regard for actual expenditures. A review of IRS files revealed that in that period, Bryant assisted in preparing a total of 8,521 individual federal income tax returns for his clients, more than 99% of which resulted in refunds. More than 20% of these returns were audited. The 22 fraudulent returns whose preparation Bryant was convicted of assisting averaged $2,435 in underreported taxes. Similarly, the court found substantially accurate the PSR's report that 1,683 other returns prepared by Bryant and audited by the IRS revealed tax underreporting totaling $4,461,- 633, for an average tax loss to the government of $2,651 per return. The sentencing court could well have estimated the tax loss caused by . Bryant on the remaining nearly 7,000 unaudited returns based on the average loss caused by the returns that had been audited. The court's acceptance of the PSR's recommendation to use an estimated total loss of $600,000—an average of less than $100 per unaudited return, instead of the more than $2,400–per–return average revealed in audits—far from being unfair to Bryant, was highly generous to him. We see no error.

 Nor do we find merit in Bryant's *pro se* contention that he was denied an adequate opportunity to review the tax returns and other documents used in the audits. He was given access to all of the papers he requested at an IRS office and was informed that the government would accommodate any reasonable request for duplication. He in fact examined the papers for parts of 19 days. His contention that the government was required to copy the entire set of documents for him, or to give him possession of the originals while he was incarcerated, is meritless.

We have considered all of Bryant's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.