UNITED STATES of America,

v.

Michael J. VONDETTE, also known as "Glenn Titus," "Big Guy," "Big," "Harry," "Steve," and "Upstate Steve," Defendant.

No. 97 CR 1010(TCP).

United States District Court,
E.D. New York.

March 30, 2001.

Howard L. Jacobs, New York City, Joel R. Weiss, Melville, NY, Robert I. Kalina, Attorney At Law, New York City, for Defendant.

Burton Ryan, Jr., United States Attorney's Office, Criminal Division, Garden City, NY, for Plaintiff.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Although the extensive factual background of this case has already been fully discussed and is summarized in the Government's papers, a brief recitation of the recent events in this matter is necessary. On November 9, 2000, a grand jury returned a second superceding indictment which charged the (self-styled) *pro se*[1] defendant Michael Vondette with two crimes. First, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(vii), 841(b)(1)(C) and 18 U.S.C. §§ 3551 *et seq.*, Vondette was charged with knowingly and intentionally conspiring with others between January 1980 and October 30, 1997 "to distribute and to possess with the intent to distribute in excess of one thousand kilograms of hashish, in excess of one thousand kilograms of a mixture and substance containing marijuana and methaqualone ..." after a prior felony drug conviction had become final. (Superceding Indictment at 1–2.) Vondette was also charged with conspiring to launder money between October 27, 1986 and January 30, 2000, in violation of 18 U.S.C. § 1956(h). *Id.*

Already having filed more than forty motions relating to the former indictments, Vondette sought to file additional motions

---

1. The Court has appointed Joel Weiss, Esq. to represent him but he insists on handling his own case and Mr. Weiss is acting as a Court appointed "advisor."

under the current indictment. He therefore submitted an application dated November 22, 2000 and an additional set of motions dated November 24, 2000. At a court conference on November 30, 2000, Vondette indicated that he intended to submit additional motions, and the Government informed the Court that it would answer Vondette's remaining motions in an omnibus opposition brief. (R. at 21–23.) Vondette subsequently submitted sets of motions dated December 6, 2000 and December 12, 2000. After the Government submitted its opposition papers, Vondette drafted a reply with several additional motions, to which the Government has submitted a further reply. It should be noted that it appears that Vondette served only copies of the November 22, 2000 and November 24, 2000 motions on this Court. The Court was not served with his other motion packages or his reply. Copies of all of these packages have been obtained from the Assistant United States Attorney.

At a conference held on February 2, 2001, this Court denied the following motions contained in Vondette's four motion packages and his reply: a motion to dismiss the indictment because of prosecutorial misconduct in front of the grand jury (R. at 18–19); a motion to dismiss for selective prosecution (R. at 19); a motion for further bills of particulars (R. at 20); a motion to dismiss the indictment because it was tainted by mentioning a prior conviction (R. at 27–31); and a motion for a hearing pursuant to 21 U.S.C. § 851 (R. at 28.) The Court also granted Vondette's motion relating to subpoenas, ordering the Government to produce the subpoenaed information for an *in camera* inspection. (R. at 26.) This memorandum addresses Vondette's remaining *pro se* motions.

As has been his practice, Vondette's motion packages include motions which have been previously denied, such as his request to have a determination of the admissibility of co-conspirators' statements, *see United States v. Vondette,* slip op. at 2 n. 1 (Mar. 14, 2000), his motion to dismiss the indictment or preclude testimony pursuant to *United States v. Sun–Diamond Growers of California,* 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), *see id.* at 7–10, and his motion to compel a psychiatric examination of the Government's principal witnesses. *See* (R. of 5/22/00 conference.) Additionally, this Court has already indicated that it would address Vondette's motion to strike surplusage in the indictment at trial. *Vondette,* slip op. at 1 n. 1. It should also be noted that this Court held an audibility hearing on January 19, 2001, at which time it denied Vondette's audibility motion and granted his request to have an expert examine the tape. This Court also denied Vondette's motion seeking release on bail at the February 2, 2001 conference. (R. at 22.)

## DISCUSSION

### I. Speedy Trial Act

Vondette claims that the Government has impermissibly "gild[ed]" the charges in the second superceding indictment, compelling their dismissal. (Application of 11/22/00, at 2–3.) This Court addressed Vondette's contentions regarding speedy trial issues in a Memorandum and Order dated September 20, 2000 and adds this section to augment the record.

▮ Although this case is more than three years old, only (by this Court's calculation) nineteen (19) non-excludable days elapsed before this case was deemed, with the consent of the defendant's then counsel, as "complex" under the Speedy Trial Act.[2] Vondette was arraigned on December

---

2. In a letter dated March 5, 2001, the Government noted that seventeen (17) chargeable days elapsed. This figure is two days less than the Court's count.

2, 1997 and an order of excludable delay was filed excluding time from December 2, 1997 until January 16, 1998. On February 27, 1998, another order of excludable delay was filed, excluding the time from January 16, 1998 until March 27, 1998. The clock ran from March 27, 1998 until the next court appearance on April 3, 1998 (seven (7) days) and then from April 3, 1998 until April 15, 1998 (twelve (12) days), at which time Vondette made a motion to dismiss the indictment. The clock was therefore stopped through May 11, 1998, when the Government filed opposition papers until June 19, 1998, when Vondette filed a reply. The Court would then have had thirty days to respond to this motion. During that thirty day period, however, on July 10, 1998, Vondette's attorney declared the case complex, with the understanding that he could later challenge that designation. He never did. Thus from July 10, 1998 forward, the clock was stopped, and a mere nineteen (19) days elapsed on the speedy trial clock. The second superceding indictment has not changed this situation, and therefore the indictment may not be dismissed on these grounds. And while this Court disagrees with the defendant's prior contentions that this Court has not ruled on his motions, any delay in decisions by this Court is justified by the complexity of this multinational drug conspiracy and the sheer (we have literally lost count of the number) volume of the defendant's sundry and frequently repetitive motions.

## II. Due Process Violations

■ Vondette apparently claims that the Government has violated his due process rights by intentionally delaying the instant superceding indictment for a three year period for the purpose of gaining "a tactical advantage" and thereby substantially prejudicing him. (Application of 11/22/00, at 2–3.) As noted above, and in a Memorandum and Order dated November 30, 2000, there has been no impermissible delay: any delay is primarily caused by Vondette's extensive motion practice. In fact, this Court has offered Vondette a speedy trial on several occasions, but he has repeatedly and consistently refused. This motion is therefore denied.

## III. Miscellaneous Discovery Motions

■ Vondette's second set of motion papers requests that "the specific drug quantity, as per the statute, is a 'substantive element' of the offense; and as such, the 'quantity' becomes a 'trial issue', thereby subject to any and all pre-trial *Brady* Discovery requirements." (Letter Mot. of 11/24/00, at 2) (original emphasis omitted). Vondette also notes that the Government must "articulate its view of the 'elements'; identify the specific 'facts' it intends to prove at trial; and demonstrate a threshold evidentiary support of its position well before the government's case in chief at trial." *Id.* (original emphasis omitted). Vondette also requests the pretrial disclosure of both the identity of the Government's informants and their testimony and the immediate disclosure of Jencks Act material. *Id.* at 3.

All of these requests are denied. First, as this Court noted at the conference held on February 2, 2001, the Government operates at its peril if it does not disclose all *Brady* material. (R. at 16–17.) That warning notwithstanding, and although the Government has not addressed this issue, it does not appear that the Government has discovery obligations with regard to the exact quantity of narcotics allegedly involved in this conspiracy before the trial begins. None of the cases cited by Vondette require this conclusion. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (holding that "other than the fact of a prior conviction, any fact that increases the pen-

alty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt"); *Castillo v. United States,* 530 U.S. 120, 120 S.Ct. 2090, 2092–96, 147 L.Ed.2d 94 (2000) (construing statutory references in 18 U.S.C. § 924(c)(1) to particular types of firearms as creating separate crimes rather than sentencing factors, and thereby finding that a jury must decide whether a defendant used or carried a machine–gun to receive a higher sentence); *Jones v. United States,* 526 U.S. 227, 251–52, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (holding that the provisions of 18 U.S.C. § 2119, a carjacking statute, are not sentencing factors but rather three distinct offenses, all of which must be charged in an indictment and proved beyond a reasonable doubt); *Richardson v. United States,* 526 U.S. 813, 824, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (holding that a jury hearing a case brought pursuant to 18 U.S.C. § 848 must unanimously agree that the defendant committed each specific violation which is alleged to constitute a continuing series). If Vondette is actually seeking to request a Bill of Particulars on the issue of the quantity of drugs seized, the Government has provided this information both in the superceding indictment which notes that the drugs were "in excess of one thousand kilograms" and in a Bill of Particulars provided in its brief which provides, among other things: that the Government's proof consists of 9,000 pounds of hashish seized in New York; that as part of the conspiracy, in late 1987 or early 1988, Vondette allegedly met with others in Portland to discuss the east coast distribution of a thirteen (13) ton marijuana load and subsequently 3000 pounds of marijuana were allegedly driven to a stash house arranged by Vondette; in 1986, Vondette allegedly distributed eight (8) tons of hashish, which had been allegedly smuggled into New York; in 1995, Vondette allegedly provided a wholesale dealer with fifty (50) pounds of high grade marijuana hydroponic; and in 1997, Vondette allegedly was in control of 4.5 tons of hashish, which were destined for distribution in New York. (Reply Br. at 32–36.)

■ Nor is Vondette entitled to the immediate disclosure of prior statements of Government witnesses pursuant to the Jencks Act, 18 U.S.C. § 3500. Under the Jencks Act, witness statements are not discoverable "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see also* Fed.R.Crim.P. 26.2(a). A court may not order the Government to produce witness statements covered by the Jencks Act prior to trial. *United States v. Percevault,* 490 F.2d 126, 129 (2d Cir.1974). Here, the Government has agreed to provide Vondette with Jencks Act material prior to trial, and this Court may not compel anything further. Moreover, as of the date of this order, the Government has apparently provided Vondette with Jencks Act material, i.e., three (3) volumes of witness statements, etc., and this motion is therefore moot.

■ Additionally, at this point, Vondette is not entitled to the immediate disclosure of impeachment material including agreements between the Government and its witnesses. This issue is challenging, as neither the Supreme Court nor the Second Circuit has decided this point and district courts have reached conflicting opinions. *See United States v. Lino,* No. 00 CR 632(WHP), 2001 WL 8356, at *14 (S.D.N.Y. Dec.29, 2000). Although the Government has not submitted its position here, even under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Vondette's motion must be denied at this point.

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to·an accused upon re-

quest violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court held that the Government has similar disclosure obligations with respect to impeachment material when "the reliability of a given witness may well be determinative of guilt or innocence." *Id.* at 154, 92 S.Ct. 763 (internal quotations omitted). Although the Court has noted that there is no constitutional difference between *Brady* exculpatory evidence and *Giglio* impeachment material, *see United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), it has not clarified the time frames for when the two types of disclosures must be made.

In *United States v. Shvarts,* 90 F.Supp.2d 219 (E.D.N.Y.2000), Judge Glasser held that *Giglio* impeachment material should be immediately disclosed to the defendant. *Id.* at 229. In January 2001, Judge Pauley similarly held that impeachment material must be produced before trial. *See Lino,* 2001 WL 8356, at *14. Several courts in this circuit have reached the opposite conclusion. *See, e.g., United States v. Jacques Dessange, Inc.,* No. 99 CR 1182(DLC), 2000 WL 280050, at *8–9, (S.D.N.Y. Mar.14, 2000); *United States v. Perez,* 940 F.Supp. 540, 553 (S.D.N.Y.1996); *United States v. McGuinness,* 764 F.Supp. 888, 896 (S.D.N.Y.1991). Taking a middle ground, Judge Nickerson has noted that as a general rule, impeachment material need not be provided before trial, but in certain circumstances, the material must be provided earlier. *See United States v. Richards,* 94 F.Supp.2d 304, 313 (E.D.N.Y.2000) (impeachment material should be disclosed in time to permit a defendant to use the information effectively while preparing his case); *United States*

*v. Volpe,* 42 F.Supp.2d 204, 228 (E.D.N.Y. 1999) (same).

■ Generally, a defendant has no constitutional right to receive *Brady* material before trial. *United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974). However, the Government must turn over impeachment material in time for the defendant to use the material effectively. *See Richards,* 94 F.Supp.2d at 313. Usually, impeachment material may be used effectively even if it is provided during the trial. *See United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial"). In instances where impeachment material is necessary beforehand, this Court may order the Government to produce that information. Here, Vondette does not point to special circumstances requiring an early disclosure of impeachment material, and his motion should therefore be denied.

■■ Vondette's request for an order compelling the Government to list all witnesses and documents "supporting the government's position" must also be denied. (Letter Mot. of 11/24/00, at 3.) Under Rule 16, in general, the Government does not have to provide a defendant with a list of its witnesses prior to trial. *See United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir.1990). If a defendant makes "a specific showing that disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case," the district court may, in its discretion, compel the Government to furnish the identity of its witnesses. *Id.* at 139–40 (quoting *United States v. Cannone,* 528 F.2d 296, 301 (2d Cir.1975)). Here, Vondette has not made such a specific showing, and his request must be denied. Additionally, as the

Jencks Act material has already been given to the defendant, this issue is, for the most part, if not completely, moot.

Nor is Vondette entitled to a list of the Government's documents. Although the Government notes that this motion has been decided, to be clear it will be briefly addressed. Rule 16 of the Federal Rules of Criminal Procedure provides in relevant part that upon request, a defendant is entitled to "inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence in chief at the trial, or were obtained from or belong to the defendant." Fed.R.Crim.P. 16(a)(1)(C). Vondette may not obtain from the Government a list of all its documents and thereby make an end run around the rules of discovery. He may only obtain information about those materials which are properly discoverable. Furthermore, this is not a case where Vondette is entitled to a list of documents the Government intends to use at trial because there do not appear to be thousands of documents here. *See, e.g., United States v. Upton,* 856 F.Supp. 727, 747–48 (E.D.N.Y.1994) (when there are thousands of documents, the Government must identify those documents it will rely upon at trial to allow the defendant to prepare adequately his defense); *but see United States v. Nachamie,* 91 F.Supp.2d 565, 568–70 (S.D.N.Y.2000) (a court may not rewrite the Federal Rules of Criminal Procedure to require the Government to identify those documents it intends to use in its case-in-chief when the Government has a large number of documents which are material to the defense). Because "it is not the job of the government to neatly organize and separate the documents for the defendant," Vondette's

motion for a list of all documents supporting the Government's position must be denied. *Upton,* 856 F.Supp. at 747–48.

■ Additionally, Vondette is not entitled to an order compelling the Government to disclose the planned testimony of its witnesses including "the discrete fact(s) and particular event the individual witnessed with specific knowledge of relevant fact." (Letter Mot. of 11/24/00, at 3.) The general discovery sought by Vondette is simply not authorized, unless, of course, any of this evidence is *Brady* material, and the motion is therefore denied.

Vondette reargues his various discovery motions and makes the following additional motions in his December 12, 2000 brief: he resubmits his May 21, 1999 motion for "all tapes, transcripts, pin and caller ID numbers" from the Kulik, Timewell and Sherrett cases. (Letter Mot. of 12/12/00, at 2.) The Government has not specifically addressed this motion in its papers, but it has indicated that it is well aware of its *Brady* and general discovery obligations. As Vondette does not point to particular items that fall within the discovery rules or provide this Court with any basis to believe that these items contain exculpatory evidence, this motion must be denied.

## IV. Offer of Proof

■ Claiming that he has "clearly established uncontroverted 'irrefutable proof' of perjury concerning the Government's principal and primary witnesses [sic] Hearsay testimony," Vondette seeks either an "order of proof" or an "offer of proof" from the Government which lists "all of its alleged informants and witnesses ... [and][w]herein, the government must proffer 'in writing': a) explaining the issues; b) listing all witnesses and documents 'supporting' the government's position; and c) demonstrating why and how the testimony is admissible." (Letter Mot. of 11/24/00, at

6) (original emphasis omitted). The motion must be denied. The civil case primarily relied upon by Vondette does not further his argument. *See Pollis v. New Sch. for Soc. Research*, 913 F.Supp. 771 (S.D.N.Y.1996), *vacated by* 132 F.3d 115 (2d Cir.1997), *remanded to* No. 93 CV 3328, 1997 WL 781888 (S.D.N.Y. Dec. 18, 1997). In *Pollis* a seventy year-old professor brought an action under Title VII and the Equal Pay Act against her employer. On a motion *in limine*, the district court examined the universe of similarly situated professors. *See generally id.* It is difficult to see any nexus between *Pollis* and the instant case. Neither do the other cases cited by Vondette have any bearing on this issue. No "offer of proof" is necessary here. In the respect that this motion apparently is another attempt to obtain additional discovery, for the reasons discussed above, it must be denied. As to Vondette's concerns about the admissibility of evidence, he will have an ample opportunity to object to any hearsay testimony at his trial.

## V. Grand Jury Testimony

Rule 6(e) of the Federal Rules of Criminal Procedure sets forth the exceptions to the general rule of grand jury secrecy. The rule provides in relevant part that

[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;

(iii) when the disclosure is made by an attorney for the government to another federal grand jury; or

(iv) when permitted by a court at the request of an attorney for the government, upon a showing that such maters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law.

Fed.R.Crim.P. 6(e)(3)(C).

██ Vondette apparently moves for the disclosure of the minutes of the grand jury which rendered the second superceding indictment. Under Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure, "the movant has the burden of asserting that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Abcasis*, 785 F.Supp. 1113, 1119 (E.D.N.Y.1992) (citing *United States v. Massino*, 605 F.Supp. 1565, 1580 (S.D.N.Y.1985), *rev'd on other grounds*, 784 F.2d 153 (2d Cir.1986)). Here, Vondette apparently alleges "outrageous government misconduct," "manufactured jurisdiction," "invented venue with 'entrapment,'" "'irrefutable proof' of perjured hearsay"; "prosecutorial misconduct" before the grand juries, (Letter Mot. of 11/24/00, at 4), and that he has been the subject of entrapment. (Letter M. of 12/06/00, at 22.) He offers no factual basis for these claims, and his motion must be denied, because "[t]here is a strong presumption of regularity in grand jury proceedings, and this presumption cannot be outweighed by conclusory or speculative allegations of misconduct." *Abcasis*, 785 F.Supp. at 1119. As discussed at the February 2, 2001 conference, this Court has reviewed the minutes of the grand jury which returned the first of the superceded indictments and found that no prosecutorial misconduct occurred there, and therefore, no

disclosure of those minutes is necessary. (R. at 18–19.)

▮ Vondette also moves for the disclosure of grand jury testimony relating to the quantity of drugs and the disclosure of the grand jury testimony of Detective Edwin Holmes in April 1997 and U.S. Customs Service Agent Johnson in October 1998. The Government has not specifically replied to these points in its current opposition papers, noting that the request for inspection of grand jury minutes has already been denied, but to be clear, Vondette's motions are denied because they are not contemplated by Rule 6.

▮ While there are "exceptional circumstances" under which a court may disclose material not listed in Rule 6(e), *In re Petition of Craig*, 131 F.3d 99, 103 (2d Cir.1997), these circumstances are not applicable here. First, there is a heavy burden on party seeking to obtain disclosure, *see id.* at 106 n. 10, and that burden is not met here where Vondette fails to show a particularized fact-based need for the material. Vondette's claim also fails under the factor test set forth in *In re Petition of Craig*, 131 F.3d 99 (2d Cir.1997), a case in which a doctoral student sought to have a court disclose the grand jury minutes of an investigation of the subject of his dissertation. *Id.* at 101. The factors include, but are not limited to

(i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material-either permissibly or impermissibly-has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question

*Id.* at 106.

The following factors strongly urge that disclosure is not warranted here. First, Vondette is the criminal defendant in this case, and the Government has opposed disclosure of the grand jury minutes. Additionally, none of this material has been made public, and there is a great need for keeping this information secret as there are other cases closely related to this one still pending, which may have been discussed during the grand jury hearings. Most importantly, Vondette requests this information as another attempt to obtain discovery materials outside of the parameters of the discovery rules. Therefore, the motion must be denied.

## VI. Dismissal under 18 U.S.C. § 201

Vondette alleges that this Court has not ruled on his motion regarding *United States v. Sun–Diamond Growers of California*, 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). As noted above, this court addressed and denied Vondette's motion in a Memorandum and Order dated March 14, 2000. *See United States v. Vondette*, slip op. at 7–10 (Mar. 14, 2000).

## VII. Motions Relating to Audio–Tapes

On January 31, 2001, after hearing the tape at issue, this Court determined that the tape was audible and denied Vondette's motion. Vondette's motion to compel the Government to produce a "chain-of-custody" for the tape (Letter Mot. of 11/24/00, at 10), is denied, as this is a matter of admissibility, which is properly addressed at the trial stage of these proceedings.

▮ Vondette also alleges that the Government is "obligated to produce all of

the materials associated with the Canadian wiretaps and any joint investigation conducted by Canadian and American authorities, referring or pertaining to the investigation or prosecution of the instant case." (*Id.* at 10.) Specifically, he seeks all audiotapes "referring or pertaining to the investigation, arrest, and prosecution" of Gregory Timewell and any "consentual" or "body-wire" tapes produced by Timewell. *Id.* at 11. The Government argues that no issue of smuggling is charged and that the issue raised by the defendant has no legal relevancy to this case. Vondette's claim has no basis under the discovery rules. As noted above, the Government operates at its peril if it does not disclose *Brady* material. This Court also declines to grant Vondette's motion to sanction the prosecution for failure to turn over material evidence to the defendant because Vondette has not shown that the Government has violated the discovery rules.

## VIII. Pre-trial physical review of evidence

Vondette argues that he should be entitled to review all evidence the Government intends to use at trial. In his Reply, he claims that this Court has already granted this motion, but he is wrong; this motion is frivolous as it is contrary to the discovery rules, and it is accordingly denied.

## IX. Motion to Dismiss the Second Superceding Indictment

Vondette makes several motions to dismiss the indictment. First, he argues that the indictment should be dismissed because it does not specifically charge that there was an agreement and because it does not sufficiently set forth facts regarding the underlying crime.

Count one of the indictment charges the following:

In or about and between January 1980 and October 30, 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL J. VONDETTE, also known as "Glenn Titus," "Big Guy," "Big," "Harry," "Steve," and "Upstate Steve," after a prior conviction for a felony drug offense had become final, together with others, did knowingly and intentionally conspire to distribute and to possess with intent to distribute in excess of one thousand kilograms of hashish, in excess of one thousand kilograms of a mixture and substance containing marijuana and methaqualone, in violation of Section 841(a)(1) of Title 21, United States Code. (Title 21 United States Code, Sections 846, 841(b)(1)(A)(vii) and 841(b)(1) (C); Title 18, United States Code Sections 3551 *et seq.*)

Count 2 of the indictment charges the following:

In or about and between October 27, 1986 and January 30, 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant Michael J. Vondette, also known as "Glenn Titus," "Big Guy," "Big," "Harry," "Steve," and "Upstate Steve," together with others, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer of currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: distribution of controlled substances, in violation of Title 21, United States Code, Section 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transactions were designed in whole and in part to disguise the nature, source, ownership and control of the

proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A) (i) and 1956(a)(1)(B)(i).

■ Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that "the indictment ... shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). An indictment is "sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Generally, an indictment is sufficient if it tracks the language of the statute and states the approximate time and place of the alleged crime. *See United States v. Pirro,* 212 F.3d 86, 92 (2d Cir.2000). Specifically, an indictment brought under 21 U.S.C. § 846 is sufficient if it "allege[s] the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated." *United States v. Macklin,* 927 F.2d 1272, 1276 (2d Cir.1991). An indictment brought under 18 U.S.C. § 1956 only needs to track the statutory language. *See United States v.*

*Pacella,* CR 95–1197, 1996 WL 288479, at *2 (E.D.N.Y. May 24, 1996).

■ This first count of the indictment is sufficient: it tracks the language of 21 U.S.C. § 846, it charges the existence of a narcotics conspiracy to distribute and possess with intent to distribute hashish and marijuana and methaqualone, and it includes both a relevant time period, January 1980 to October 30, 1997, and the statutes alleged to have been violated, 21 U.S.C. 846, 841(b)(1)(A)(vii), 841(b)(1)(C), and 18 U.S.C. 3551 *et seq.* Similarly, the second count is sufficient because it tracks the statutory language. Therefore, the inclusion in the charge of the word "agreement" is not necessary. Moreover, the word "agreement" is not required because the charge indicates that Vondette has been accused of a conspiracy, and this places Vondette on notice of the crime he has been called to defend. Additionally, because the indictment meets the charging requirements, it is factually sufficient, and Vondette's claim that the grand jury lacked evidence upon which to render a probable cause finding must be denied. "An indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence." *United States v. Casamento,* 887 F.2d 1141, 1182 (2d Cir.1989).[3]

3. Even if it is assumed that the indictment was not factually sufficient, the Bill of Particulars provided by the Government in its reply papers and the information the Government intends to give (and has given) more than five (5) days prior to trial including the specific identity of co-conspirators, aiders and abettors, and cooperators is sufficient to enable Vondette to prepare his defense. The Bill of Particulars contained in the Government's papers includes, among other things, the following statements: the proof will consist of 9,000 pounds of hashish and a quantity of methaqualone pills seized in New York; in the mid 1980's, Vondette allegedly participated in multiple shipments of wholesale quantities of marijuana which he delivered from Mexico to wholesale distributors in New York; in late 1987 or early 1988, Vondette allegedly met in Portland, Oregon with others to arrange the east coast distribution of a thirteen (13) ton marijuana load and that, among other things, Vondette allegedly arranged a stash house for 3000 pounds of marijuana in Woodstock/Saugerties area of New York; in 1986, Vondette allegedly distributed an eight (8) ton hashish load in New York and allegedly smuggled eight (8) tons of hashish from Pakistan into a New York harbor; in 1995 and 1996, he allegedly participated in money laundering activities as a result of his drug trafficking, including allegedly meeting people in Manhattan restaurants to deliver currency; in the summer of 1996, he allegedly arranged to

Next Vondette makes several arguments rooted in concept of duplicity, some apparently argued by his attorney advisor at oral argument. Vondette maintains that the grand jury was misled by the indictment because it aggregates twenty years of conspiratorial activity. He claims that the indictment may have or will potentially lead a jury to reach a verdict that is not unanimous, that the indictment may cause double jeopardy concerns, that the Government has improperly used "retroactive misjoinder" when drafting the indictment by joining together multiple conspiracies into a single conspiracy allegation, and that there is no basis in the law for the Government's merging of many alleged conspiracies as a single conspiracy in what he calls a "conspiracy enterprise." (Letter Mot. of 12/06/00, at 3–14). Vondette further alleges that this long span of activity may lead to evidentiary problems at trial "as evidentiary rulings permitting evidence to come in as to one of the 'separate' offenses may be inadmissible as to the other." (Letter Mot. of 12/06/00, at 8.) Finally, he again maintains that the case against him is merely premised on his association with certain cooperating witnesses.

■ To prevent the possibility of a nonunanimous jury verdict, courts have fashioned the doctrine of duplicity, which is implicated when an indictment "joins two or more distinct crimes in a single count." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992). In the Second Circuit, duplicity will not be found if the indictment charges "acts that could be charged as separate counts of an indictment" if those acts are "characterized as part of a single continuing scheme." *Id.* (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989)).

■ Mindful that "[w]hether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or instead, has proven several independent conspiracies is a question of fact for a properly instructed jury," *United States v. Berger*, 22 F.Supp.2d 145, 151 (quoting *United States v. Johansen*, 56 F.3d 347, 350 (2d Cir.1995)), Vondette's motion regarding the "conspiracy enterprise" is denied. It is the Government's burden at trial to show that the alleged acts were part of a single conspiracy. The motions regarding duplicity and improper pleading must also be denied. Here, the indictment charges two single conspiracies: one conspiracy is to distribute drugs, and the other conspiracy is to launder money. As both of these charges allege a continuing scheme, the indictment is properly pled and is not duplicitous. Similarly, after a trial in which Vondette will have an adequate opportunity to present his defenses, the jury will decide whether the Government has proven a conspiracy or merely,

---

provide a quantity of quaaludes to an individual whose assistance he had solicited in connection with the distribution of multi-ton loads of hashish; in 1997, he allegedly controlled a 4.5 ton shipment of hashish which was destined for New York. At this point, it also seems prudent to note that the Government has alleged a basis for venue in the Eastern District of New York. While the issue of venue will ultimately be decided at trial, the Government here notes the following connections with this District: that part of the mid 1980's shipments of marijuana from Mexico to New York was distributed in the Eastern District; the parties to the meeting of drug dealers in Portland, Oregon in late 1987 or early 1988 flew in and out of airports in the Eastern District of New York and that proceeds from the sale of drugs were flown from airports in the Eastern District of New York to Portland; in October 1995, Vondette delivered fifty (50) pounds of high grade marijuana hydroponic in Queens, New York; and couriers who met Vondette to pick up or deliver drug proceeds flew into airports located in the Eastern District of New York.

as Vondette argues, an acquaintance relationship with cooperating witnesses.

 In related arguments Vondette claims that there has been either a constructive amendment or a variance to the indictment. He therefore fears that the jury may convict him of a crime that was not charged by the grand jury. Although the Government has not addressed these motions in its current set of motion papers, they should be denied. Motions based on constructive amendment and variance must be made after a trial has been completed because both theories involve a review of the evidence presented at trial. A constructive amendment occurs "when the government's presentation of evidence and the district court's jury instructions combine to modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir.1996). A variance arises "when the evidence adduced at trial establishes facts different from those alleged in an indictment." *Dunn v. United States*, 442 U.S. 100, 105, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). As this case is still in a pre-trial posture, these motions must be denied without prejudice to renew in the event that they are advisable after trial.

 Finally, Vondette alleges that the grand jury was "prejudiced" by the mention of aliases. (Reply at 13.) He requests a pre-trial hearing to determine whether such disclosure requires the dismissal of the indictment. As the Government points out, Vondette's alleged use of false identities is intertwined with the offenses charged because he allegedly used aliases to cash gold bullion, to establish mail drops, and to obtain storage sites. Additionally, there are witnesses who allegedly only knew Vondette under an alias. For these reasons, the grand jury was not misled by the placement of aliases in the indictment.

## X. Inclusion of Additional Overt Acts in the Indictment

Vondette argues that if the indictment is not dismissed, additional overt acts should be placed in the indictment to avoid confusing the jury. Vondette includes in his motion papers nine separate scenarios to be included in the indictment. As the indictment will not be read to the jury, this request is denied.

## XI. Pretrial Hearings to Determine the Existence of a Conspiracy, the Admissibility of Co-conspirators' Statements and the Establishment of Jurisdiction

Vondette moves for a hearing to determine the existence of a conspiracy, alleging that the prosecution has not specifically charged the existence of an agreement among co-conspirators nor overt acts in furtherance of the conspiracy. This motion had originally been denied without prejudice to renew.

 It should first be noted that neither 21 U.S.C. § 846 nor 18 U.S.C. § 1956(h) require proof of overt acts. *See generally, United States v. Shabani*, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (section 846 does not require proof of an overt act); *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976) ("an indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy"); *Pacella*, 1996 WL 288479, at *2 (section 1956(h) does not require proof of an overt act, and an indictment brought under this section may merely track the language of the stat-

ute). Thus this motion and Vondette's apparent argument that the Government must allege an overt act within the statute of limitations period is denied. Additionally, case law establishes that there need not be a hearing to determine the existence of a conspiracy and the admissibility of co-conspirators' statements. *See United States v. Bernard*, No. 3:97 CR 48(AHN), 1998 WL 241205, at *4 (D.Conn. Apr.2, 1998) (citing *United States v. Aguirre–Parra*, 763 F.Supp. 1208, 1217 (S.D.N.Y. 1991); *United States v. Ianniello*, 621 F.Supp. 1455, 1478 (S.D.N.Y.1985), *aff'd*, 808 F.2d 184 (2d Cir.1986), *cert. denied sub nom., Cohen v. United States*, 483 U.S. 1006, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987)). The appropriate time to consider whether there is a conspiracy is at the conclusion of the Government's case. *Id.*

Buried in Vondette's reply papers is his request or "motion" to hold a pre-trial evidentiary hearing "to adequately allow [sic], through the questioning of the Government agents and other witnesses, the establishment of the artificially created jurisdiction in this case." (Reply at 5.) Vondette does not further clarify the grounds on which this motion is based (it is placed in a section discussing overt acts), and the Government does not specifically reply to this motion. If the issue pressed by Vondette is a request for a pre-trial hearing concerning venue, a jury must decide that question. *See United States v. Sutton*, 13 F.3d 595, 598 (2d Cir.1994), but as we have noted in footnote 3 *supra*, the Government has indicated its desire to prove that at least one significant act in furtherance of the conspiracy occurred in this District. There appears to be no other valid basis for the motion, and it is denied.

## XII. Motion for an Order Requiring a Psychiatric Examination

■ On May 22, 2000, this Court denied Vondette's motion to order a psychiat-ric examination of one or more of the Government's principal witnesses. Now Vondette moves for an order compelling the psychiatric examinations of Randall Resnick, Gregory Timewell, Thomas Sherrett, and Lawrence Marcus. Vondette argues the examinations are necessary because several of these witnesses have used aliases, admitted to committing crimes, and abused drugs and alcohol. The Government alleges that this motion has already been decided.

This motion must be denied because there are no objective symptoms alleged supporting the defendant's conclusion that these individuals are incompetent to testify.

## XIII. Suppression

Vondette moves to suppress the following items: all evidence obtained by wire-taps or electronic devices, Audio-tape N–137, the hashish seized in 1996, and evidence related to the alleged alias of Glenn Titus.

Vondette reasserts his November 1999 motion to suppress all evidence obtained by wire-taps. In reply to that motion, the Government indicated that it was unaware of any evidence arising from court-ordered or other wiretaps or electronic eavesdropping equipment. (Br. of 4/27/00, at 4).

With respect to his motion to suppress the tape, Vondette argues that the contents of the tape may not be admissible. He also argues that pursuant to 18 U.S.C. § 2515, the tape may be inadmissable "because no notification was given on the tape that it was being recorded, in a possible violation of 'eavesdropping statutes' and the 'expectation of privacy' . . . ." (Reply at 23.) The Government counters that Vondette has not raised either a factual or a legal basis to suppress the tape. This Court agrees. The proper time for the

airing of Vondette's evidentiary concerns is at trial.

Vondette's motion seeking the suppression of the hashish must also be denied. He argues that Judge Letts found " 'outrageous government misconduct' in connection with the herein evidence ..." and that therefore under the "fruit of the poisonous tree doctrine," the hashish should be suppressed. (Reply at 25.) The Government argues "that the hashish was delivered to New York as a controlled delivery. It was in the government's possession." (Reply of 2/01/01, at 2.) The Government does not address Vondette's characterization of a finding by Judge Letts. However, without more specific information from Vondette, this Court finds that he fails to provide an adequate basis for this motion.

Vondette's motion for the suppression of all evidence relating to Glenn Titus must also be denied. He claims that the evidence "appears to have been illegally 'seized' without the proper search warrant; and is thus 'inadmissible.' " (Reply at 12) (original emphasis omitted). The Government claims that it learned of Vondette's alleged use of the alias Glenn Titus from a coconspirator who had access to the false identification papers. It therefore argues that no governmental action was taken and no Fourth Amendment rights were implicated. Because nothing has been provided to refute this, a suppression hearing is not necessary, and his motion is denied.

## XIV. Summary Judgment on Vondette's Civil Claim

On August 23, 2000, Vondette moved for summary judgment on a civil action captioned *Vondette v. Dept. of Justice*, 99–CV–5257. On August 28, 2000, this Court endorsed an order granting the Government sixty (60) days to file its reply, and on September 21, 2000, this Court granted an additional sixty (60) days for the Government to reply. The Government sent an additional request for time to reply on December 21, 2000. By an endorsed order dated March 7, 2001, this Court granted a request to stay the civil action until the conclusion of the criminal trial. Vondette's motion is therefore moot.

## XV. Motion to Compel the Release of Vondette's Case File

Vondette has also moved for an order compelling his former attorney, Robert I. Kalina, Esq., to release his case file. Mr. Kalina has informed this Court's chambers that he has forwarded the file to Vondette. Assuming that Vondette has received the file, this motion is denied as moot.

\* \* \* \* \* \*

Since drafting the foregoing, in complete disregard and in contemptuous defiance of this Court's order on the record at the end of his last Court appearance, in exchange for (i) 3500 material, (ii) waiver of his claim for a speedy trial, (iii) the grant of his request for a six week adjournment of his trial and (iv) a condition that the defendant make no further motions, defendant has now delivered a letter dated March 18, 2001 addressed to the prosecutor (a copy of which was forwarded to this Court) reiterating another eighteen or more motions or demands most of which are repetitious of previous motions.

1. Demand for a list of exhibits—See pp. 156–157 *supra.*

2. Demand for a list of government witnesses—See 156–157 *supra.*

3A. Bill of particulars—See pp. 152–153, and 154 *supra.*

3B. Travel Records and U.S. Customs TECS records alleged to be "Brady" material. The Court has heretofore on several occasions directed the government to turn over any and all *Brady* material in its possession.

3C. *U.S. v. Kulik* trial minutes—a substantial portion if not all of these voluminous minutes is on file in this Court and is and has been available for inspection by defendant's attorney and by defendant in this Court.

3D. Statements of witnesses not being called to testify. Again, if *Brady* material, the government is under Court order to deliver the same.

3E. Rule 17 subpoenas—Defendant is not entitled to the government's subpoenas. The Court has stated it will sign any necessary trial subpoenas requested by defendant and his counsel.

4A. The Court ruled on this request at defendant's appearance on January 31, 2001.

4B. The government has provided the defendant with three volumes of 3500 material. If erroneously redacted where *Brady* material is involved, the government proceeds at its peril.

4C. If *Brady* material see above—otherwise not discoverable.

4D. The government is directed to turn over to the defendant and his attorney at least twenty-four hours before a witness takes the stand Rule 11 guilty pleas, allocutions and sentencing minutes.

4E. See pp. 158–159. Two or more years ago this Court examined in *camera* the grand jury minutes herein and found them to be sufficient to sustain the indictments herein. As to grand jury statements of witnesses to be called see 4D above.

5. See transcript of 2/02/2001 at pp. 28–30.

6A. This pertains to a question of law and defendant may designate and submit to this Court requested portions of the decision which he wishes to be read as part of defendant's case, (if any).

6B. The Court does not have "Attachment D." Defense counsel may offer portions as part of defendant's case and a ruling will be made at that time.

6C. The defendant apparently admits these documents to be probative and admissible evidence.

As heretofore ordered, the Court will not entertain any further pre-trail motions by the defendant, absent good cause shown by both the defendant *and* his counsel.

\* \* \* \* \* \*

## CONCLUSION

For the reasons stated above, all of Vondette's motions are denied. By this Court's informal count, they now total more than eighty (80) motions, undoubtedly a record in a criminal case. The Court has examined Vondette's remaining arguments to these motions and found them to be without merit.

SO ORDERED.